ANNIE RONAN

*v.*

MARY F. C. BLUHM.

*Opinion filed April 21, 1898—Rehearing denied June 10, 1898.*

1. APPEALS AND ERRORS—*when overruling exception to master's report is fatal.* Overruling an exception to the master's report for his failure to report the evidence as required by the order of reference is fatal error, where an inspection of such evidence by the court is necessary to a proper determination of the exceptions.

2. TRIAL—*when inspection of evidence taken by master is necessary.* An inspection by the court of a written instrument which the master deemed a sufficient release, to remove from a witness the disqualification of interest, is necessary to determine whether the instrument had the legal effect given it by the master, particularly where the testimony of such witness is substantially the only basis for the master's findings of fact.

3. EVIDENCE—*on opening decree pro confesso the bill, decree and evidence are admissible.* Upon opening a decree *pro confesso*, against a non-resident served by publication, setting aside a sale of land as being merely colorable, to enable the grantee to answer denying the allegations of the bill, the original bill and decree, and the evidence taken in support thereof, should be considered with the new evidence in determining the issues raised by such answer.

4. SAME—*when bill, decree and evidence are admissible to determine competency of witness.* Where, upon opening a decree *pro confesso* setting aside a sale of land as being merely colorable, to enable the grantee to answer denying the allegations of the bill, the grantor is allowed by the master to testify after admitting in evidence a release from the grantee which the master deemed sufficient to remove the grantor's disqualification of interest in the suit, the original bill and decree, and the evidence in support thereof, are entitled to admission to aid in determining the competency of the grantor as a witness and the value to be given his testimony.

5. PLEADING—*omission of averment of tender is not fatal to relief if answer is filed.* The omission from a bill to set aside a sale of land of an averment of the complainant's readiness to refund the purchase money is ground for demurrer, but, upon answer filed, relief will not be denied because of such defect in the bill, but will be granted upon equitable terms to be declared by the decree.

6. CONTRACTS—*limitations of doctrine that court cannot rescind contract without return of value received.* The doctrine that a contract cannot be rescinded by the court unless the party in whose favor the rescission is awarded shall restore what he received under the contract, is applicable, in general, only to contracts made by persons *compos mentis* and under no disability.

7. SAME—*when grantee is entitled to return of consideration on setting aside sale by insane grantor.* A completed contract of sale of lands by a grantor who is insane but who has not been judicially declared insane, for a fair consideration, to a grantee who acted without fraudulent intent or notice of the grantor's disability, will not be set aside in favor of the grantor or his representatives unless the purchase money is restored to the grantee.

8. SAME—*grantee acting fraudulently or with notice of grantor's disability cannot insist on return of consideration.* Where a grantee, with notice of his grantor's incapacity to manage his property, delivers to the latter money or property in exchange for lands, and the consideration paid is lost or wasted, or where the consideration is so inadequate as to indicate the grantee's intention to defraud, upon a bill by the grantor or his representatives to set aside the sale the grantee cannot invoke the maxim "he who seeks equity must do equity," to obtain a return of the consideration.

9. NOTICE—*grantee charged with notice of rights of party in possession.* Where a grantor does not deliver possession to the grantee, but remains in the open, exclusive possession of the premises, a party taking a deed from the grantee during such occupancy is charged with notice of all the rights and equities of the first grantor.

APPEAL from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

One Thomas Ronan in 1865 became the owner of the west half of lot 10, block 4, in school section addition to the city of Chicago, and resided thereon from thence forward until his death, which occurred in 1888. On the 25th day of April, 1882, said Ronan conveyed said property to one Thomas Carbine. Carbine did not receive possession of the property, and on the next day after receiving the

deed therefor conveyed it to the appellee, his daughter. Two days thereafter Mary Ronan, a daughter of the said Thomas Ronan, filed a petition in the county court of Cook county, alleging the said Thomas Ronan was, and for a period of more than two years prior thereto had been, a confirmed drunkard, and was, and for that period had been, by reason of said drunkenness, and unsoundness of mind thereby produced, incapable of managing or caring for his estate, and praying the petitioner might be appointed conservator for her said father. Such proceedings were had in the said county court as that the said Thomas Ronan was declared an habitual drunkard and incapable of managing his estate, and the said Mary was appointed his conservator and received letters empowering her to act in that capacity.

On the 2d day of June, 1882, the said Mary, as such conservator of her said father, filed a bill in chancery in the circuit court of said county against the said Thomas Carbine and the appellee, the prayer whereof was the said deed to Carbine, and from Carbine to the appellee, should be set aside and vacated. At the December term, 1882, a decree was entered in the cause, which recited that the court had jurisdiction over the said defendant, Carbine, by personal service of summons, and that appellee, Bluhm, was a non-resident of the State of Illinois and had been duly and legally notified of the proceedings by publication, as provided by statute, and that neither came, either by plea or answer, and adjudged both to be in default and be deemed to have confessed the bill, and directed that the cause be referred to Henry Walker, master in chancery, to take and report the proof. Proofs were taken and reported by the master, and on the 12th day of January, 1883, a decree was entered finding that the allegations of the bill were supported by the proofs, and that complainant was entitled to the relief prayed; that the deeds from Ronan to Carbine, and from Carbine to the appellee, were null and void, and ordering appel-

lee, Bluhm, to reconvey the premises to the said Thomas
Ronan within a specified time, and that the master should
convey in case of her failure. In pursuance of this decree,
and the failure of the appellee, Bluhm, to convey, the
master, Henry Walker, executed a deed conveying the
property to the said Thomas Ronan. Afterwards said
Carbine entered a motion to set aside the default as to
him, but the motion was overruled. Within a few days
thereafter appellee, Bluhm, appeared in said court and
filed her petition under the provisions of section 19, chap-
ter 22, of the Revised Statutes, entitled "Chancery," to be
allowed to file her answer to the said bill and be heard
touching the matters of the decree entered against her.
The prayer of the petition was granted, and the said ap-
pellee, Bluhm, given leave to file an answer within twenty
days from the 21st day of May, 1883, but it does not ap-
pear from the record whether she filed an answer. No
further proceedings were had in the matter until the 22d
day of June, 1886, at which time, on the motion of the
appellee, an order was entered that the suit should be
dismissed for want of prosecution, but the order was va-
cated at the same term of the court.

On the 24th day of February, 1888, said Thomas Ronan
died, leaving three children, viz., Mary, (now Mary Cron,)
Annie, the appellant herein, and Michael Ronan, an in-
sane son, who was at the time of the death of his father
confined in the insane hospital at Kankakee. The death
of Thomas Ronan was suggested to the court, but no steps
were taken to make his heirs parties to the proceeding.

On the 6th day of July, 1892, on motion of the appellee,
an order was entered that the suit be dismissed for want
of prosecution. On the 2d day of August, 1893, the ap-
pellant, Annie Ronan, and the said Mary Cron, (formerly
Ronan,) and Michael Ronan, (the latter being insane, and
appearing by Annie Ronan, his next friend,) filed a bill
in chancery against the appellee, Bluhm. The bill set out
the death of the said Thomas Ronan; that complainants

were his only heirs, and recited the legal proceedings hereinbefore mentioned, and prayed that the order of dismissal entered as aforesaid should be opened and the complainants allowed to take the place of the said conservator, and that the said appellee, Bluhm, should be ordered to answer the bill in accordance with the leave granted to her upon her petition, and that in default of such answer the former decree against her should be in all things confirmed. It was also alleged in the bill that the bill on which said decree against Carbine and appellee was entered, alleged that appellee paid nothing to Carbine as consideration for the conveyance to her, and that such deed was made only for the purpose of covering and secreting the interest of Carbine and preventing the conservator of Ronan from recovering such title, and, in effect, that Carbine remained the real owner of the premises, the deed to appellee being only colorable.

The appellee appeared and filed a demurrer to the bill, but the demurrer was overruled and leave given her to answer in thirty days. She failed to comply, and on the 26th day of January, 1894, a default was entered against her and a decree entered setting aside the order of dismissal and confirming the former decree. On the 9th day of April of the same year, on the application of the appellee, Bluhm, the decree last referred to was set aside and she filed an answer. Replication was filed to the answer, and on the 26th of May, 1894, the cause was referred to George M. Rogers, as master, to take and report the proofs, together with his conclusions on the law and the evidence. Afterwards, on the 25th of January, 1896, leave was given said appellee, Bluhm, to file a cross-bill. The allegations of the cross-bill are, that the complainant in the cross-bill received the deed from Carbine in good faith and as the owner of the property; that the said cross-complainant was a resident of the State of Illinois in the years 1882 and 1884, and that the attempt to get a decree against her as a non-resident was fraudulent and

such decree void; that Thomas Ronan during his lifetime had possession of said premises, and his children since his death have retained the possession and have paid no rent therefor; that the cross-complainant paid all the taxes thereon, and the prayer is that the title to the property be quieted in the cross-complainant and that she be put in possession thereof.

A demurrer to the cross-bill was overruled and answer thereto filed. The answer, in substance, denies the allegations of the cross-bill, and alleges the said appellee was a non-resident or was concealed so that her residence could not be known. Replication to the answer was filed, and the issues under the cross-bill were also referred to the said master, Rogers, to take and report the proofs, with his conclusions of law and fact. The report of the master as to his conclusions of law and fact was filed on the 8th day of May, 1897, together with the exceptions of the appellant and her co-complainants. The exceptions were (1) that said Thomas Carbine, who testified before the master as a witness for appellee, was incompetent to testify as to transactions with Ronan or as to any other alleged circumstance alleged to have occurred during the lifetime of said Ronan; (2) that the master erroneously excluded the former decree in the case against said Carbine and appellee, and also the report of the former master and the evidence taken before such former master, upon which such prior decree was pronounced; (3) that the master should have reported a finding affirming the former decree and recommending the cross-bill be dismissed. The report of the master was not accompanied by the testimony taken by him, and a further exception was taken and filed by the appellant on that ground, but the court, over the objection of appellant, ordered the cause to be submitted for trial upon the finding of the master, without the evidence taken by the master and such evidence was not on file and not produced on the hearing.

It appeared from the master's report that the said Thomas Carbine was produced, and, over the objections of the appellant, was allowed to testify as a witness. The master reported the objection to the competency of Carbine, and that he found from the evidence of Carbine, if it was competent to be considered, that the compensation paid to Thomas Ronan for the lot "was not so unconscionable as to be inequitable;" that the appellee, Bluhm, was a resident of the State of Illinois at the time in question; that the Ronans had retained possession of the property and that no attempt had been made to interfere with their possession. The report further recited, that after the testimony of said Carbine had been concluded the solicitor for the appellee offered in evidence an instrument in writing (to quote from the report) "dated August 1, 1893, in which said Mary F. C. Bluhm and her husband released said Carbine from any liability which might arise by reason of said deed, and the said Carbine, being recalled, swore that all of his previous testimony was true." The master reported as his conclusion of law that Carbine was a competent witness, and that, it being established by the testimony of Carbine that appellee, Bluhm, was not a non-resident of the State at the time the original bill was filed against her, the decree entered in the case on service by publication was void, and that neither the decree, nor any of its recitals, nor any evidence preserved in the record of that case, was proper to be considered by him as entitled to any weight as against appellee, Bluhm, and that he refused to receive the same in evidence for any purpose. It also appeared from the recitals of the report that double payment of taxes was made by the Ronans and by Carbine, and that Carbine testified that the payments made by him were with the money belonging to the appellee, Bluhm, and that Carbine further testified that he "sent down and demanded the rent about once a year," but never got any.

Upon consideration of the recitals and findings of the master's report the court entered a decree finding the appellee was a resident of the State at the time in question, and that the decree rendered against her in the proceeding on service by publication was null and void; that no money had ever been tendered or offered by or on behalf of Thomas Ronan or any of the complainants in return for the money received from the said Carbine, and that the said Ronan and the complainants have occupied the premises since the date of the deed to Carbine, and decreeing appellee, Bluhm, was the owner of the premises in controversy and entitled to the relief asked in the cross-bill; that appellee should be let into the possession of the premises in thirty days, and that the appellant and her co-complainants should pay the costs. This is an appeal from such decree.

H. C. NOYES, for appellant.

STORY, RUSSELL & STORY, for appellee.

Mr. JUSTICE BOGGS delivered the opinion of the court:

The cause having been referred to the master to take and report the proofs and his conclusions on points of law and fact, the proofs taken by the master should have been submitted with his report. But whether the omission is a fatal error depends upon whether an inspection of the evidence by the court was necessary in order to determine as to the exceptions to the report. Whether the instrument in writing which the master deemed sufficient to relieve the witness Carbine from all liability because of the covenants in his deed to the appellee was effectual for that purpose, made it necessary the instrument should be consulted by the court in order to determine whether it operated to remove the interest of the witness. The deed from which possible liability of the witness arose was under seal, and could only be modified and varied by a release under seal. *Loach* v. *Farnum,* 90 Ill. 368.

The finding of the master (which was not excepted to) that the order dismissing the original proceeding for want of prosecution had no operation to set aside or affect the final decree which had been previously entered in the case was correct.   But we think the master erred in excluding from consideration the bill upon which the decree was rendered, the decree, and the proof reported by the former master in support of it.   The question to be determined upon the issues which were raised by the petition of the appellee that the said final decree be opened and she be allowed to answer and be heard, and by her answer, was whether, upon consideration of the evidence produced by the appellee in support of her answer and of that which was adduced before the former master on which the original decree was entered, the decree should be set aside, altered or changed.   (*Whittaker* v. *Whittaker*, 151 Ill. 266.)   Moreover, we think the bill and the decree were proper for consideration in determining the competency of the witness Carbine, and also in determining as to the weight or value of his evidence if he was found competent to testify.

It was alleged by the appellant and her co-complainants, in the bill exhibited by them, that the bill filed by the conservator, and on which the prior decree was entered, alleged the conveyance of the premises in question from the witness Carbine to his daughter, the appellee, was without consideration, and was executed for the purpose of placing the apparent title in the appellee and covering and concealing the interest of the said Carbine in the said property.   This was, in effect, an averment that the said Carbine was the real owner of whatever interest in the premises it should be determined was conveyed by the deed made by the said Thomas Ronan.   The witness Carbine was made defendant to the said bill filed by the said conservator and was personally served with summons to make answer thereto.   He failed to appear and answer, but made default, and thereby confessed the

truth of the material allegations made therein against him.    It was therefore competent to produce the bill and the decree, for the purpose of showing said Carbine was interested in the result of the proceeding aside from the interest which the appellee conceded, and to remove which she introduced the said instrument in writing before referred to.    If the bill and the decree sustained the claim that the title held by the appellee was merely colorable and held by her for the benefit of Carbine, then Carbine should have been held, for that reason, incompetent to testify; and if he was found competent to testify, the allegations of the bill and the decree showing the same had been taken as confessed by him were competent to be considered as tending to impeach his testimony.    It appears from the report of the master that his findings on questions of fact are based almost entirely upon the testimony of Carbine.    Indeed, as we understand the report, no other witness than Carbine was examined before the master.    This competency, and the weight and value of his testimony if competent, were therefore questions of vital importance to the appellant.

It is urged the original bill filed by the conservator of the said Thomas Ronan and the bill filed by appellant and her co-complainants are both fatally defective, in that in neither is an offer made to return the amount paid by Thomas Carbine to Thomas Ronan as the consideration for the execution of the conveyance of the lot in question.    The argument is, it is indispensable to the right of recovery under either bill that it should appear the complainants had previously tendered a return of the purchase money, or should have averred in the bill a readiness, ability and willingness to re-pay the same.    A number of the decisions of this court are cited as in support of the argument.    We have examined the cases so cited. They were bills in chancery to set aside sales of lands for taxes, and have little, if any, application to the principle involved in the case at bar; and even in that class

of cases it is not the rule that the bill must aver a prior tender of the amount paid by the purchaser for taxes, etc., or that a bill is fatally defective if it does not contain an averment the complainant is ready and willing to pay the same. The omission of an averment that the complainant was willing and ready to pay, even in a bill to redeem from a tax sale, mortgage, etc., would but leave the bill obnoxious to demurrer, and if an answer should be filed to such a bill, relief would not be denied upon the hearing because of the defect in the bill, but would be granted upon equitable terms to be declared by the decree.

The doctrine that a contract may not be rescinded by the court except the party in whose interest the rescission is awarded shall restore that which was received by virtue of the contract, is applicable, in general, only to contracts made by persons *compos mentis* and under no disability. Whether it is applicable, or, if applicable, to what extent it should be modified to meet particular cases where persons *non compos* have received money or property as the consideration for an agreement, has been much discussed by text writers and is the subject of many, not altogether harmonious, judicial decisions. The rule which seems to commend itself to our sense of justice, and which is supported by what we conceive to be the weight of authority, is that a completed contract of sale of lands by a grantor who is insane but has not been judicially declared insane, for a fair consideration in money or property, to a grantee who entered into the contract without fraudulent intent and without knowledge or notice of the disability of the grantor, will not be set aside in favor of the grantor or his representatives unless the purchase price be returned or the property parted with by the grantee be restored. (*Scanlan* v. *Cobb*, 85 Ill. 296; Boswell on Insanity, secs. 413, 414.) If the grantee, with notice of the incapacity of the insane grantor to manage his estate, invests such grantor with the posses-

sion of money or property in exchange for lands, and the said money or property, by reason of the mental incapacity of the grantor, is wasted and lost, or if the grantee, with such knowledge, obtains a conveyance of the lands from such a grantor for a consideration so inadequate as to be inequitable and to evince that it was his intention to take advantage of the infirmity of the grantor and to defraud him, such a grantee would have no standing to invoke the equitable rule that "he who asks equity must do equity," and demand that under the operation of that maxim a court of equity should refuse to set aside the conveyance except upon the imposition of such terms as would amply protect him from any loss. Such a rule would be but to guarantee that although the attempt to fraudulently procure the property of an insane man might fail, yet the perpetrator of the attempt would be protected by law from any loss in the transaction.

It is proper we should remark, in answer to the discussion upon the point, that as it is conceded by all parties that the said Thomas Ronan did not deliver possession of the premises in question to the grantee, Carbine, but remained in the open and exclusive occupancy thereof, appellee, Bluhm, is deemed, as matter of law, to have taken the conveyance from Carbine with full notice of all the rights and equities of said Ronan in the premises. *Illinois Central Railroad Co.* v. *McCullough*, 59 Ill. 166; *White* v. *White*, 89 id. 460; *Ford* v. *Marcall*, 107 id. 136.

The decree will be reversed and the cause remanded, with directions to the court to set aside the report and findings of the master in chancery and the order of reference to the master, and permit the parties to produce their testimony anew, and to proceed otherwise in conformity with this opinion.          *Reversed and remanded.*