**George F. Jordan, Conservator, Appellee, v. W. A. Kirkpatrick, Appellant.**

**W. A. Kirkpatrick, Appellant, v. George F. Jordan, Appellee.**
**Consolidated for Hearing.**

1. CONTRACTS—*status of, made by lunatics.* A deed or contract made by an idiot or lunatic before inquest is merely voidable and not void.

2. CONTRACTS—*when made by lunatics set aside.* If a contract is made on behalf of a lunatic by an agent the same can be set aside if such lunatic has obtained no advantage therefrom and if the want of mental capacity to create the agency could have been ascertained by inquiry.

3. CHANCERY—*jurisdiction of, to set aside lunatic's contract.* A court of equity has jurisdiction to entertain a proceeding to set aside a contract for want of capacity to make it.

Bill in equity. Appeal from the Circuit Court of McLean county; the Hon. C. D. MYERS, Judge, presiding. Heard in this court at the November term, 1909. Affirmed. Opinion filed January 5, 1911.

F. Y. HAMILTON and JOHN E. POLLOCK, for appellant.

LIVINGSTON & BACH, for appellee.

MR. JUSTICE BAUME delivered the opinion of the court.

On January 4, 1907, George F. Jordan, conservator of Minnie E. Arnold, a distracted person, filed his bill in equity in the Circuit Court of McLean county, praying for the cancellation of a certain note for $1,000, dated October 1, 1906, signed by said Minnie E. Arnold and Albert N. Arnold, her husband, payable one year after date to the order of the defendant, W. A. Kirkpatrick, and also a certain mortgage bearing even date with said note executed and acknowledged by the said Minnie E. and Albert N. Arnold, and given to secure the payment of said note, upon the ground that at the time of the execution by her of said note and mortgage said Minnie E. Arnold was a distracted person, under duress of her husband, by whom she was compelled to execute the same; that she received no consideration therefor, and that immediately after the making of said note and mortgage she was willfully deserted by her said husband and left destitute; that the defendant knew or could have known by the use of reasonable care and caution on his part that the said Minnie E. Arnold was not at the time of the execution of said note and mortgage of sound mind and memory and capable of understanding the consequences of her acts. On November 4, 1907, W. A. Kirkpatrick filed his bill to foreclose said mortgage. After answers filed to said bills the two causes were consolidated and referred to the master in chancery to take and report the proofs therein together with his findings thereon. Objections were filed by the complainants in both bills to the findings of the master, which objections were by him overruled. The cause was heard by the chancellor upon said objections standing as exceptions to the master's report, and a decree was entered granting the relief prayed in the bill filed by George F. Jordan, as conservator of Minnie E. Arnold, and dismissing the bill filed by W. A. Kirkpatrick to foreclose the mortgage involved, for want of equity. To reverse such decree this appeal is prosecuted by W. A. Kirkpatrick.

The decree finds the facts as found by the master and such facts are recited in said decree substantially as follows:

That on October 6, 1906, Minnie E. Arnold was a distracted person and had been so distracted for a period of four months prior to said time; that on October 1, 1906, Minnie E. Arnold was the owner of the property in question, subject to two mortgages, one for $1,500 and one for $500, both of which had been executed to Fred B. Capen within a period of six months prior to October 1, 1906; that both of said mortgages were valid and existing liens against said premises on October 1, 1906, and are still valid; that Albert N. Arnold, the husband of Minnie E. Arnold, on October 1, 1906, removed the said Minnie E. Arnold from the hospital, where she was then being confined and under the physician's care, to the apartment of one Mrs. Dugdale, and that at said time said Albert N. Arnold, representing himself to be the agent of the said Minnie E. Arnold, applied through a loan broker to W. A. Kirkpatrick, for a loan of $1,000, to be secured by a mortgage on the said premises; that said W. A. Kirkpatrick did not know the said Minnie E. Arnold and had not seen her prior to that time, and did not see the said Minnie E. Arnold at the time of the execution of the mortgage and note aforesaid, and did not have knowledge of the fact that the said Minnie E. Arnold was then and there and had been for four months a distracted person; that said W. A. Kirkpatrick was not guilty of any fraud or legal negligence on his part, and that nothing occurred at the time of the execution of the papers aforesaid to raise the suspicion of the notary public or the loan broker or W. A. Kirkpatrick as to the mental incompetency of Minnie E. Arnold; that the said loan was negotiated in the ordinary manner of conducting the loan business; that at the time the said Minnie E. Arnold signed said note and mortgage, she was without any sane mind at all and incapable of understanding or transacting the

ordinary business affairs of life; that on October 13, 1906, a petition for a conservator was filed, and on October 31, 1906, a jury trial was had in the county court of McLean county and a verdict rendered that she was a distracted person, and said court then and there appointed the said George F. Jordan conservator for the said Minnie E. Arnold; that on the day of the execution of said note and mortgage, the said W. A. Kirkpatrick gave to Albert N. Arnold his check for $965, the proceeds of said loan, after deducting commissions and abstract fees, which said check was made payable to the order of Minnie E. Arnold and was paid by the bank on which it was drawn on the same day to the said Albert N. Arnold; that no portion whatever of the proceeds of said note and mortgage and check were ever received by Minnie E. Arnold or any person for her or was ever expended or used for her benefit; that Minnie E. Arnold did not receive any of the benefits of said note and mortgage aforesaid; that during the said period while the said Minnie E. Arnold was a distracted person, she occasionally had lucid intervals of an hour or more duration in which she would be able to converse intelligently; that the transaction did not occur during such a lucid interval and while her mind was strong enough to enable her to transact ordinary business; that Albert N. Arnold, immediately after receiving the proceeds of defendant W. A. Kirkpatrick's check, appropriated all of said money to his own use and immediately abandoned his wife, and left her penniless and without means of support in the said premises of said Mrs. Dugdale; that the note and mortgage executed by the said Minnie E. Arnold on October 1, 1906, became due on October 24, 1907; that the same or any part thereof, has never been paid. The above recital of facts in the decree is substantially supported by the evidence in the record, except as to the amount of the two checks executed by Kirkpatrick upon the delivery to him of the note and mortgage in question. The check designated as being for $35 was

in fact for $35.30 payable to the order of Edward O'Conner, who negotiated the loan, and the check designated as being for $965 payable to Minnie E. Arnold was in fact for $964.70. The evidence further discloses that the check for $964.70 purported to bear the endorsemeent of Minnie E. Arnold prior to its presentation for payment by Albert N. Arnold, who also endorsed said check by the name of Bert Arnold.

It is conceded by counsel for appellant that Minnie E. Arnold was a distracted person at the time she executed the note and mortgage in question and that no actual benefit or advantage accrued to her from the money or any part thereof obtained from appellant upon said note and mortgage, but notwithstanding this, it is insisted, that as neither the appellant, nor the loan broker, nor the notary public, had any knowledge that Minnie E. Arnold was a distracted person, and they having acted in entire good faith in negotiating said loan and procuring the execution of the note and mortgage, appellee is not entitled to the benefit of the decree here entered without restoring to appellant the money realized on said note and mortgage; or, in other words, that upon the facts as found and conceded to be true appellee is not entitled to the relief prayed unless appellant is placed in *statu quo*. On the other hand it is contended by counsel for appellee that in the absence of proof that Minnie E. Arnold derived any benefit or advantage by the execution of the note and mortgage in question, appellant is not entitled to a decree foreclosing said mortgage, and that the decree here entered is in accord with the well established principles of equity.

It must be regarded as the settled law of this state that a deed or contract made by an idiot or lunatic before inquest found is merely voidable and not void. Scanlan v. Cobb, 85 Ill. 296; Burnham v. Kidwell, 113 Ill. 425; Ronan v. Bluhm, 173 Ill. 277; Eldredge v. Palmer, 185 Ill. 618; Hardy v. Dyas, 203 Ill. 211; Peck v. Bartelme, 220 Ill. 199; Rev. Stat., chap. 86, sec. 15.

Whether or not in such case the aid of a court of equity may be successfully invoked on behalf of a lunatic, to set aside and rescind an executed contract whereby the lunatic had derived no benefit, where the other party to the contract acted in ignorance of the lunacy and in perfect good faith, without restoring or offering to restore such other party to the contract to his original position, is a somewhat mooted question.

In Pomeroy's Equity Jurisprudence, vol. 2, 3rd ed., sec. 946, it is said: "A contract executed or executory made with a lunatic in good faith, without any advantage taken of his position, and *for his own benefit,* is valid both in equity and in law. And where a conveyance or a contract is made in ignorance of the insanity, with no advantage taken, and with perfect good faith, a court of equity will not set it aside, if the parties cannot be restored to their original position, and injustice would be done."

In Gribben v. Maxwell, 34 Kans. 8, 55 Am. Rep. 233, the conveyance sought to be annulled was executed and deliverd by a lunatic before an inquisition and finding of lunacy, and no offer was made to return to the purchaser the money paid for the conveyance of the land. It appeared that the purchaser acted in good faith; that he paid a fair and reasonable price for the land; that he had no knowledge or information of the lunacy of the grantor; that there was nothing in the looks or conduct of the grantor at the time to indicate that she was of unsound mind or incapable of transacting business; but on the contrary that she was apparently in possession of her full mental faculties. The court in passing upon the question involved said: "An examination of the cases upon the subject shows that there is an irreconcilable conflict in the authorities. We think, however, that the weight of the authority favors the rule that where the purchase of real estate from an insane person is made, and a deed of conveyance is obtained in perfect good faith, before an inquisition and finding of lunacy, for a sufficient consideration,

without knowledge of the lunacy, and no advantage is taken by the purchaser, the consideration received by the lunatic must be returned, or offered to be returned, before the conveyance can be set aside at the suit of the alleged lunatic or one who represents him.''

Behrens v. McKenzie, 23 Iowa 333, 92 Am. Dec. 428, was an action upon an injunction bond wherein it was claimed that the defendant was insane when he signed the bond. Speaking of the liability of insane persons on contracts, Mr. Justice Dillon there said: ''They are not usually held liable on contracts purely executory not for necessaries, particularly where the mental unsoundness is known to the other party, or might have been by the exercise of ordinary observation. But with respect to executed contracts, the tendency of modern decisions is to hold them liable in cases where the transaction is in the ordinary course of business, is fair and reasonable, and the mental condition was not known to the other party, and the parties cannot be put in *statu quo.*''

In Scanlan v. Cobb, 85 Ill. 296, Cobb, as guardian of Fannie Hendricks, filed his bill against Scanlan and Lyman to set aside a deed to Scanlan executed by his ward before she was adjudged insane, and also a deed of trust on the same property described in the deed, from Scanlan to Lyman, as trustee, upon the ground that the grantor was insane when she executed the deed to Scanlan. The deed was taken by Scanlan in good faith, and without culpable negligence, and it was held, that he was entitled at all events to be reimbursed that which he had paid and which Mrs. Hendricks had received the benefit of. It was there said: ''In Menkins v. Lightner, 18 Ill. 282, the decree was reversed solely upon the ground that the amount of purchase money paid to the lunatic was not allowed to the other party in stating the account. And the English doctrine, and that recognized generally by the courts in this country, is, where a purchase from an insane person is made and a conveyance obtained in good

faith, for a sufficient consideration, and without knowledge of the insanity, the consideration must be returned before the conveyance will be avoided. And the courts have gone further and held, that where persons apparently of sound mind, and not known by the adverse party to be otherwise, enter into a contract which is fair and *bona fide*, and which is executed and completed, and the property which is the subject of the contract cannot be restored so as to put the parties in *statu quo,* such contract cannot be set aside by the alleged lunatic or those who represent him," citing numerous authorities in support of the text. And it was there further said: "If Mrs. Hendricks received the benefit of this money, either in the payment of debts, or in the furnishing of necessaries for her use, there can be no question she should be held responsible for it. But even if she did not thus receive the benefit of it, it would seem, on the principle recognized by the authorities above referred to, her recourse should be on Van Wormer" (her attorney in fact) "and not on Scanlan."

Burnham v. Kidwell, 113 Ill. 425, was an action in ejectment by Kidwell, an idiot, by his conservator, wherein the plaintiff sought to disaffirm his deed. It was held that where land is bought of a person before he is adjudged an idiot, in good faith, by the purchaser, or money is loaned to him in good faith, and he secures its payment by mortgage, and the proceeds of the sale or loan are expended in and about his care and support, the deed or mortgage cannot be avoided until the money so received by the idiot is returned, or offered to be returned.

In Ronan v. Bluhm, 173 Ill. 277, it was held that where a grantee, with notice of his grantor's incapacity to manage his property, delivers to the latter money or property in exchange for lands, and the consideration paid is lost or wasted, or where the consideration is so inadequate as to indicate the grantee's intention to defraud, upon a bill by the grantor

or his representative to set aside the sale, the grantee cannot invoke the maxim "he who seeks equity must do equity," to obtain a return of the consideration. In discussing the questions there involved it was said: "The doctrine that a contract may not be rescinded by the court except the party in whose interest the rescission is awarded shall restore that which was received by virtue of the contract, is applicable, in general, only to contracts made by persons *compos mentis* and under no disability. Whether it is applicable, or, if applicable, to what extent it should be modified to meet particular cases where persons *non compos* have received money or property as the consideration for an agreement, has been much discussed by text writers and is the subject of many, not altogether harmonious, judicial decisions. The rule which seems to commend itself to our sense of justice and which is supported by what we conceive to be the weight of authority, is that a completed contract of sale of lands by a grantor who is insane but has not been judicially declared insane, for a fair consideration in money or property, to a grantee who entered into the contract without fraudulent intent and without knowledge or notice of the disability of the grantor, will not be set aside in favor of the grantor or his representatives unless the purchase price be returned, or the property parted with by the grantee be restored. (Scanlan v. Cobb, 85 Ill. 296; Boswell on Insanity, secs. 413, 415.)"

In Eldredge v. Palmer, 185 Ill. 618, where an alleged insane grantor appears to have received the consideration for the land conveyed it was held, that a deed by one from whom a conservator is subsequently appointed should not be set aside without requiring restoration of the money paid by the grantee and the return of the property or its equivalent, which he conveyed to a third party at the instance of the grantor in part consideration for his deed, where the grantee had no knowledge or notice of the grantor's infirmity,

or of any influence by the party to whom the grantee made his conveyance.

In Hardy v. Dyas, 203 Ill. 211, it was held that where a grantee knowing the grantor's incapacity to manage his property, pays him money which is lost or squandered, or if the grantee intended to defraud the grantor of his property, a court of equity may set aside the deed without requiring the consideration to be refunded, and in the discussion of the questions involved the court quoted with approval the doctrine announced in Ronan v. Bluhm, *supra*.

The doctrine announced in the cases cited must necessarily be considered with reference to the particular facts in each case. In every instance in which a person alleged and shown to have been insane, when he entered into the contract sought to be avoided, was required to place the other party to the contract in *statu quo,* such insane person had derived some benefit or advantage under said contract. In the case at bar the insane mortgagor derived no benefit or advantage whatever by the execution of the mortgage. Furthermore the equities of the parties are not equal. The mortgagor was as much incapacitated to appoint her husband her agent to act for her in negotiating a loan as she was to act for herself in that respect. While she was helpless to protect herself it was within the power of appellant and he was in a position to ascertain as it was his duty to do, by what authority her husband assumed to act as her agent and the scope of his agency. An inquiry by appellant, such as he might reasonably have made to ascertain these facts, would have doubtless disclosed the mortgagor's want of mental capacity.

The decree of the circuit court was right and will be affirmed.

*Affirmed.*