79  519
s182s166

---

## Ezekiel Smith, Joseph Eastman and Patrick J. Sexton v. Bates Machine Co., impleaded with the Sanitary District of Chicago, Dion Geraldine and unknown persons interested in the earnings of Smith & Eastman, etc.

1. Equity Jurisdiction—*Where It Attaches.*—Jurisdiction in equity attaches, unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity affords under the same circumstances.

2. Equitable Assignments—*Can Not be Made at Law.*—Equitable assignments can not be made at law, but are good only in equity, and create equitable liens in favor of the assignee which courts of equity will protect and enforce.

**Bill to Declare an Equitable Trust.**—Appeal from the Circuit Court of Will County; the Hon. Dorrance Dibell, Judge, presiding. Heard in this court at the May term, 1898. Affirmed. Opinion filed December 14, 1898.

Haley & O'Donnell, attorneys for appellants.

J. F. SNYDER, attorney for appellee; HENRY M. COBURN, of counsel.

MR. JUSTICE CRABTREE delivered the opinion of the court.

Appellee filed its bill in the Circuit Court of Will County for the purpose of having an equitable trust declared in its favor, against certain funds alleged to be held by the Sanitary District of Chicago, due Smith & Eastman, who were contractors on section fourteen (14) of said Sanitary District.

By the terms of the contract between Smith & Eastman and the Sanitary District the latter had the right to retain in its hands earnings of said Smith & Eastman for labor and materials expended by them in the performance of their contract, and for which they had not paid. In the original bill it was alleged that appellee had furnished labor and materials to Smith & Eastman, in the course of the work done by them on said section 14, to the amount of $8,598.70 and it was claimed that by the terms of the contract between Smith & Eastman and the Sanitary District the latter had become equitably bound to pay sub-contractors and material men for any labor performed or material furnished to the contractors during the progress of the work. For our purpose it is unnecessary to set out fully all the allegations of the original bill, as the questions before us for determination arise on the case as made by amendments subsequently made thereto. Answers were filed to the original bill by the defendants thereto, The Sanitary District of Chicago, Smith & Eastman and Patrick J. Sexton, denying that by the terms of the contract any equitable interest was created in favor of the complainant, and denying that it had any rights whatsoever that it was entitled to have established and enforced in a court of equity, and denying specifically the jurisdiction of the court to hear or determine any of the matters involved in the original bill of complaint and upon which relief was prayed. The case proceeded to a hearing upon the original bill, answers thereto and replications to the answers, and upon such hearing it was developed by the evidence that by an agreement entered

into by and between Eastman and Patrick J. Sexton, which was in writing and dated January 15, 1894, Eastman sold out his interest in the contract to Sexton; and although the business was thereafter continued and carried on in the name of Smith & Eastman, Smith and Sexton were the real principals, and Sexton was in fact an undisclosed principal acting in the name of Eastman.

It further appeared from the evidence that Dion Gerald-ine was a sub-contractor on said section 14, under Smith & Eastman, and that he had become indebted to appellee for machinery and material furnished to him in the course of his work under such sub-contract, to the amount of sixty-six hundred dollars ($6,600); that in consideration thereof he gave to appellee an order on Smith & Eastman as follows, viz.:

"CHICAGO, September 10th, 1894.
SMITH & EASTMAN, original contractors, Section No. 14, Sanitary Drainage Canal, Lockport, Ills.

GENTLEMEN: You will please pay to Bates Machine Company, Joliet, Ills., the sum of sixty-six hundred dollars ($6,600), out of moneys earned by me as sub-contractor on Section No. 14, during the next six months, as follows: $1,000 out of November earnings, payable December 2nd, next; $1,000 out of December earnings, payable January 2nd next; $1,500 out of January earnings, payable February 2nd next; $1,500 out of February earnings, payable March 2nd next; $1,000 out of March earnings, payable April 2nd, next; $600 out of April earnings, payable May 2nd next; and charge same to my account.
Very truly,
DION GERALDINE.
Duplicate for Bates Machine Company.
DION GERALDINE."

This order was handed to Sexton on the day it bears date and he made an indorsement thereon as follows:

"We accept the above order and will agree to pay said amounts to Bates Machine Company, on the dates mentioned, providing the earnings of Mr. Dion Geraldine for the months enumerated are sufficient to cover said amounts.
SMITH & EASTMAN,
Per P. J. SEXTON."

When these facts were developed, the complainant asked

and was granted leave to amend its bill so as to set them out, and in this amendment it was alleged and insisted that the real firm was Smith & Sexton instead of Smith & Eastman; that the order for $6,600 above set out constituted and was an equitable assignment of that sum of money, and the prayer was that the court should so decree.

The theory of the amendment, as we understand it, was, that the defendant Geraldine had, by written order, assigned a part of the amount that would become due him from Smith & Eastman, or Smith & Sexton, under his sub-contract with them, and that the amount due or to become due, was a fund in the hands or under the control of the court; and that such assignment should be protected and enforced by the court and a decree entered preserving the equities and lien that the appellee had upon the fund.

It was alleged in the amended bill, that the Sanitary District of Chicago had notice of such equitable assignment, created by the written order above set out, and in pursuance of such notice had retained and still retains, of the moneys due Smith & Eastman or Smith & Sexton, the sum of $39,548.18.

Appellants filed answer to the amended bill, whereby, as we understand them, two defenses are presented, viz.: 1. That the remedy at law was complete and a court of equity was without jurisdiction. 2. That a true construction of the order only meant that it should be paid out of net earnings, and that during the months named in the order Geraldine had no net earnings, but that his expenses for the work done by him during the time covered by the order exceeded his earnings; that he was overpaid and there was nothing due him for his work with which to pay the order.

On a final hearing the court held against appellee upon the contention insisted upon in the original bill, that is, that the Sanitary District was a trustee under its contract with Smith & Eastman, under the general rules of equity, and refused to hold that a court of chancery had jurisdiction to enforce such a trust, or to enforce the contract at the suit of the complainant, for labor performed and material

furnished to Smith & Eastman or Dion Geraldine, for which they have failed to pay, and dismissed the bill without prejudice as to all matters except the $6,600 mentioned in the order of September 10, 1894, which the court held created an equitable assignment in favor of appellee for the amount named, and that a court of equity had jurisdiction to enforce and preserve the same in appellee's favor.

The court also held that a true construction of the order and acceptance was not limited to net earnings of said Geraldine, but must be held to mean gross earnings, during the months of November and December, 1894, and January February, March and April of 1895.

And the court found from the evidence that not only the gross earnings, but the real and true net earnings of Geraldine during the months named were more than sufficient to cover the amounts specified in the order for said months respectively, and that Smith and Eastman had, in the treasury of the Sanitary District of Chicago, said amounts of money so earned by Geraldine, and should have paid the same, or ordered it paid to the complainants in accordance with the terms of the order.

The court further found from the evidence that $3,000 had been paid the complainant upon the order, leaving $3,600 unpaid, which the court decreed should be paid to appellee by the Sanitary District, with interest at five per cent from May 2, 1895, amounting to $360, and making a total decreed to be paid to appellee, of $3,960.

The court dismissed the bill against the Sanitary District as to all other matters except the balance due on the order for $6,600, and from that part of the decree sustaining appellee's equities in said order, Smith & Eastman and Patrick J. Sexton have appealed to this court.

While many errors are assigned upon the record, only two are discussed by counsel for appellant in argument, and the others must therefore be considered as waived.

The first point made is, that a proper construction of the order for $6,600 and its acceptance, only means that Smith & Eastman, or Smith & Sexton, would pay the same

out of the net earnings of Geraldine during the months named, or, in other words, that Smith and Sexton were not bound to pay the order or regard it as in any way casting a liability upon them, unless, after all other expenses of Geraldine in performing his sub-contract were paid, there should still be found a balance due him. This is the position, as we understand the argument, although not expressed precisely in that way. We see no reason for giving the order and acceptance any such construction. Nothing in the language of the instrument itself requires such a construction, and we know of no rule of law which compels it.

The case of Brown v. Hebard, 20 Wis. 327–330, is cited by counsel for appellants as being in point. The controversy arose as to the proper construction of a statute of the State exempting the earnings of all married persons    *    *    * for sixty days next preceding the issuing of process by any court of record or justice of the peace, etc. The debtor in that case was a flour inspector and employed others to assist him in his work. It was held that the net proceeds of the debtor's services as flour inspector, after the payment of his employes, were his earnings, and as such were exempt within the period fixed by the statue.

Conceding this to be the law, and strictly following it, the result is that Geraldine's net earnings would be the difference between his earnings for the months named, and the amount of the pay roll of his employes during the same length of time.

An examination of the evidence, as abstracted, fails to satisfy us that on this basis Geraldine's earnings were not amply sufficient to pay the order. Counsel for appellants fail to tell us what the pay rolls amounted to, or to give us any reference to the abstract or record where we might obtain the information. We do not find it tabulated in the abstract, and can not be expected to search for it over nearly two thousand pages of the record. We must therefore presume that the chancellor found correctly that the net earnings were sufficient to pay the order. We are referred to page 276 of the abstract for a statement of

Geraldine's earnings and expenses, commencing with July, 1894, and concluding with the final estimates in December, 1895. For the six months mentioned in the order, the earnings are given as $41,276.80 and the amount expended as $50,705.11. The amount thus expended seems to have included pay rolls and other expenses, according to the argument of counsel for appellant, but what these "other expenses" included does not appear. One item of $2,900 is given as "sundry machinery," and how much of the other expenses may have been machinery does not appear. No reason is perceived why the order of appellee should not as well have been paid as the expenses for other machinery, which, so far as the abstract shows, may have been furnished after Smith & Sexton had accepted the order and become liable thereon. From the best estimates we have been able to make from the abstracts of the evidence, we have reached the conclusion that after taking out Geraldine's pay rolls during the months named in the order, his net earnings remaining were sufficient to pay the order, and on this point the Circuit Court reached a correct decision. It is worthy of note that Smith & Eastman or Smith & Sexton have paid $3,000 on this order, notwithstanding their present contention that at no time during the months named was there any net earnings of Geraldine out of which they would be required to pay the same. They evidently have not at all times construed or understood their acceptance to mean what they now contend for.

The second proposition of appellants is that the remedy of appellee, if any, is complete and adequate at law, and that the court erred in retaining jurisdiction of the case.

The court's decree was based upon the theory that the order of Geraldine upon Smith & Eastman in favor of appellee, constituted and was, in equity, an equitable assignment of the sums of money therein mentioned, in favor of appellee, to be paid out of the fund thereafter earned by Geraldine under his sub-contract with Smith & Eastman. The order being accepted by them, they certainly had full notice of this equitable assignment. Hence there can be no question, so far, that the theory was correct. But as we have

already seen, by the terms of the contract between Smith & Eastman and the Sanitary District, the latter was expressly empowered to withhold moneys earned by the former for the purpose of protecting persons furnishing labor or material to such contractors on section 14 of the main Drainage Canal. In pursuance of this authority the Drainage District had in its hands moneys which it would have paid to Smith & Sexton but for the claims of appellee through the equitable assignment to it by Geraldine of a portion of the fund, and the acceptance of the order by Smith & Sexton. Hence the fund upon which appellee claimed an equitable lien was in the hands of the Sanitary District, and we think appellee had a right to resort to a court of equity for relief. Appellee may have had a remedy at law, but in the nature of things it could not have been as full, adequate and complete as in a court of equity. The jurisdiction in equity attaches, unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances. Gormully v. Clark, 134 U. S. 338; Kilbourne v. Sunderland, 130 Ib. 505.

There was in this case an equitable assignment of a part of the fund to become due Geraldine under his sub-contract. Such an assignment can not be made at law, but is good in equity and creates an equitable lien on the fund in favor of the assignee which a court of equity will protect and enforce. Phillips v. Edsall, 127 Ill. 535; Warren et al. v. First Natl. Bank of Col., 149 Ill. 9.

We think also that the jurisdiction may be sustained on the ground that the Sanitary District had in its hands money earned by Geraldine, and which, under its contract with Smith & Eastman, may be treated as trust funds for the payment of labor and for materials furnished by third parties to Smith & Eastman for the completion of their contract on the Drainage Canal. There were different parties claiming the fund, and the principle of an interpleader was involved, although the Sanitary District was not asking any relief.

The Sanitary District, being indifferent as to whether it

'pays the money to Smith & Eastman or to appellee, does not complain of the decree and has not appealed therefrom.

On the whole we are of the opinion the decree does justice between the parties according to the principles of equity, and it will be affirmed.

Presiding Justice DIBELL, having heard the case in the court below, took no part in this decision.