Bank of Montreal v. Waite.

## Bank of Montreal v. Charles Waite et al.*

1. BOARD OF TRADE—*Power of Courts to Review Finding of the Board of Directors.*—The courts have nothing to do with the question whether a judgment of the board of directors of the board of trade is correct, or whether the evidence before the board of directors is sufficient to authorize its finding.

2. EQUITY—*Will Restrain One Who Seeks to Avail Himself of a Crime.*—Equity will restrain one who seeks to avail himself of a crime and thereby to deprive another of his property. This is true whether he or another has committed the crime by which he attempts to benefit himself.

3. FRAUD—*Destructive Effect upon a Contract.*—The destructive effect of fraud upon any contract, conveyance, or other transaction, is so essential and far reaching, that no person, however free from any participation in the fraud, can avail himself of what has been obtained by the fraud of another, unless he is not only innocent, but has given some valuable consideration. The remedy which equity gives to the defrauded person is most extensive. It reaches all those who were actually concerned in the fraud and all who directly and knowingly participated in its fruits.

4. SAME—*Concurrent Jurisdiction of Equity and Law.*—Courts of equity have concurrent jurisdiction with courts of law on questions of fraud.

5. BY-LAWS—*Must Be Authorized by Charter.*—A by-law of a corporation to be valid must be authorized by its charter.

6. SAME—*Section 6 of Rule 20 of the Board of Trade Illegal.*—So far as section 6 of rule 20 of the by-laws of the board of trade requires compulsory submission of property rights, the corporation had no right to adopt it, as the general assembly did not grant it that power.

7. CORPORATIONS—*What Powers Are Conferred by Charter.*—Only those powers are given to a corporation by its charter as are given in express words or by necessary implication. The charter of a corporation, read in the light of any general laws which are applicable, is the

*One of several cases involving the same question. The cases were argued together, and briefs submitted in the others were all considered in this one.

measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental.

**Bill for an Injunction.**—Appeal from an interlocutory order of the Superior Court of Cook County; the Hon. Arthur H. Chetlain, Judge presiding. Heard in this court at the October term, 1902. Affirmed. Opinion filed January 8, 1903.

This is an appeal from an interlocutory order of injunction, upon bill filed by appellees, the material parts of which are as follows:

The appellees, Charles Waite and Robert H. Thorburn, doing business as Waite, Thorburn & Co., being members of the board of trade of Chicago, allege that they had sold on the board of trade to the defendant, C. H. Canby & Co., 20,000 bushels of standard oats at thirty-seven cents a bushel and 30,000 bushels at thirty-seven and one-fourth cents a bushel, to be delivered in July, 1902; that during the month of July a corner or combination and conspiracy to raise the price of said oats was formed by Bartlett, Frazier & Co., Carrington, Patten & Co.; James A. Patten, and other members of the board of trade; that said corner and conspiracy to raise the price of oats, a staple article of commerce in necessary use throughout the United States of America, was a combination in restraint of trade and void; that the said corner caused the price of said oats on the board of trade to be as high as seventy cents per bushel during part of July, 1902, and sixty-four cents on July 31, 1902, which price of sixty-four cents a bushel was the settling price for said oats on the board of trade on July 31, 1902; that sixty-four cents a bushel for standard oats was established as the settling price on said board of trade solely as a result of said illegal corner, and that said price of sixty-four cents a bushel was not the legitimate or reasonable market price of said oats upon said last date, but that the legitimate and reasonable value was not to exceed thirty-eight cents per bushel; that the price of sixty-four cents a bushel for said standard oats is an exorbitant and unconscionable price, established only by said illegal corner; that appellees were unable to comply with their contract,

but defaulted in said contract and failed to deliver any part
of the 50,000 bushels of oats agreed to be delivered to C. H.
Canby & Co., on or before July 31, 1902; that thereupon
the defendants, Canby & Co., under the rules of the board of
trade in reference to settlements, elected to require appel-
lees, Waite, Thorburn & Co., to settle said contract at the
average market price of said oats on the board of trade on
July 31, 1902, the last day on which the oats could have
been delivered under the contract, which price was the
alleged exorbitant and unconscionable price of sixty-four
cents a bushel; that appellees offer to pay to the defend-
ants, Canby & Co., the legitimate, reasonable or actual
value of said 50,000 bushels of oats on July 31, 1902, or
they offer to deliver said standard oats in kind and bulk,
according to said contract, which tender and offer of the
oats and the actual or reasonable value of said oats Canby
& Co. refused to accept, but demand and claim they are
entitled under the rules of the board of trade to settle on
the unconscionable and unreasonable price of sixty-four
cents a bushel.

The bill sets out the rules of the board of trade, which
provide how a committee of three members of the board
may determine matters in dispute in reference to deposits
made as security for such contracts as that set forth in the
bill; that such dispute shall be submitted to said com-
mittee of three upon the application of either party to such
contract, and that such application may be made in case
of failure to settle such dispute as to deposits within three
days after the maturity of all contracts upon which the
deposit is applicable; no application was made by either
party to the contract for the appointment of such com-
mittee; that the rule of the board of trade which provides
that the purchaser may require of a seller a settlement at
the average market price on said board of trade is a rule
contrary to public policy and void, in so far as it compels a
settlement of contracts at fictitious prices established by
an illegal combination or corner in restraint of trade;
appellees offer to settle on the actual value of oats on July
31, 1902, to be determined by the court, and which they

claim is thirty-eight cents a bushel, instead of sixty-four cents a bushel, which they allege to be a fictitious price.

The bill further sets out the rules of the board of trade requiring parties to contracts to make certain deposits with the treasurer of the board of trade or with some bank authorized by the directors of the board to receive such deposits as security for such contracts; that appellees deposited margins with this appellant Bank of Montreal as security for their contracts with Canby & Co., for which this appellant issued its certificates for such margins so deposited, payable under the rules of the board of trade; that the president of the board of trade and said Bank of Montreal, and each of them, threaten to indorse said margin certificates to the defendants; and appellees fear he or it will do so unless restrained therefrom.

It further appears from the bill of complaint that appellees did not indorse said certificates so that Canby & Co. could take down the money deposited in escrow with this appellant, but before said margins so held in escrow could be paid to Canby & Co. under the indorsement of the president of the board of trade, and before either appellees or Canby & Co. had made application for the appointment of a committee under the provisions of rule 20, section 6, appellees filed their bill for an accounting and injunction in the Superior Court of Cook County.

The bill of complaint names as defendants, Caleb H. Canby, Uriah R. Denniston and Charles W. Gillette, doing business as C. H. Canby & Co.; William S. Warren, president of the Board of Trade of the city of Chicago, and the Bank of Montreal.

Appellees offer to do equity, and pray (among other things) for an accounting, that defendants may be enjoined from taking any steps to enforce their said claims against appellees, and from indorsing down the margin certificates, and that the president of the board be enjoined from indorsing or turning over said certificates, and that the bank be enjoined from indorsing or otherwise transferring or paying said certificates, or the money represented thereby. They also pray for a writ of injunction, as above set forth.

Bank of Montreal v. Waite.

Upon the verified bill and accompanying affidavits the court granted a temporary injunction as to all the defendants. A motion was made to dissolve this injunction. The court, upon the hearing of such motion, entered an order of injunction against the Bank of Montreal only, in the following words:

" It is therefore ordered that an injunction issue restraining the said defendant Bank of Montreal from indorsing or otherwise transferring or paying said complainants' margin certificates or money represented thereby, or any part thereof, to said Caleb H. Canby, Uriah R. Denniston and Charles W. Gillette, defendants, or either of them, their agents, attorneys or assigns, until further order of this court."

From this interlocutory order the Bank of Montreal perfected this appeal, and assigned the following errors:

" 1.    The court erred in entering the interlocutory order of August 4, 1902, ordering an injunction writ to issue against the said Bank of Montreal.

2.    The court erred in taking jurisdiction of the persons and subject-matter in said bill.

3.    Because the complainants below have not made or stated such a cause as entitled them in a court of equity to any recovery or relief from or against this appellant touching the matters contained in said bill, or any of such matters."

HENRY S. ROBBINS, JOHN S. GOODWIN, WALTER D. HAWK, GEORGE F. MERRICK and JAMES E. MUNROE, attorneys for appellant.

LYNDEN EVANS, SEARS, MEAGHER & WHITNEY, COLIN C. H. FYFFE and ROSWELL B. MASON, attorneys for appellees; NATHANIEL C. SEARS of counsel.

MR. PRESIDING JUSTICE BALL delivered the opinion of the court.

Appellees have invoked the aid of a court of equity to restrain the Bank of Montreal from paying over to the defendants, Canby & Co., moneys deposited in that bank by appellees under the rules of the board of trade as margins

upon certain purchases of grain made by appellees upon
said board, from Canby & Co.   The certificates issued upon
such deposits are in duplicate, and by the terms thereof
the moneys represented thereby are to be paid out upon the
indorsement of the certificates by both depositor and
depositee, or on the order of the president of the board of
trade indorsed upon either the original or duplicate certifi-
cate, " as provided by the rules of said board."   The facts
set up in the bill of complaint are admitted to be true for
the purposes of this hearing.   The bill alleges, in substance,
that appellees sold on the board of trade to Canby & Co.,
20,000 bushels of oats at thirty-seven cents a bushel, and
30,000 bushels of oats at thirty-seven and one-fourth cents
for July, 1902, delivery; that during the month of July,
1902, there was "a corner" on the board of trade in oats,
by which the price of oats for July, 1902, delivery was run
up and fixed at the exorbitant and fictitious price of sixty-
four cents per bushel, while the actual market value of oats
for that month did not exceed thirty-eight cents per bushel;
that appellees had margined their said trades by deposits
in the Bank of Montreal, pursuant to the rules of the board,
and the defendants were about to pay out and to receive
said margins in settlement of such sales at the exorbitant
and fictitious price of sixty-four cents per bushel.   Appel-
lees pray the court to take control of this fund, and to pre-
vent it being so applied; they also pray for an accounting,
and offer to do and perform whatever equity may require.

The real matter here in dispute is the ownership of this
fund.   The bank can not safely pay out this fund, which it
holds in escrow, unless, first, both parties to the certificate
indorse it; or, second, the president of the board of trade
indorses it; or, third, the bank pays it out under the decree
of a court having jurisdiction of the subject-matter and
of the persons interested in the escrow fund.   The first
has not been done; the bill claims, in effect, that the presi-
dent of the board, without the consent of the parties to the
certificates, has no power to do the second; and hence, if
the bank desires to avoid the danger of a double liability,

it must wait the action of the court.   It follows the bank has such an interest in the subject-matter of this suit, that it had the right to take and to perfect this appeal.

Appellant says that appellees have an adequate remedy at law, and therefore they are not entitled to equitable relief.   We do not think that this contention is well founded. Had appellees indorsed the certificates they could not thereafter successfully maintain an action at law against the bank, since the production of the indorsed certificates would defeat them.   Nor would their position as against the bank have been any stronger had they suffered the president of the board to indorse the certificates.   They would be met by that indorsement, which is duly authorized by the face of the certificates.

Would appellees be in any better position in a suit at law against Canby & Co. after the latter had drawn down this money in either of the ways provided ?   We think not.   In any suit at law against either the bank or against Canby & Co., appellees would be met and overthrown by the strict terms of their contract.

On the other hand, if appellees submit their contention to a committee of the board, and that tribunal proceeds regularly, but finds and fixes the price of settlement at the " cornered " price and not at the actual price, they would be remediless under the law as laid down in Board of Trade v. Nelson, 162 Ill. 431, where the court say :

" Whether the evidence before the board of directors was sufficient to authorize its finding, can not be examined into by the courts.   The relator stands convinced by the sentence of a tribunal of his own choice.   With the question whether that judgment was correct upon the facts, the courts have nothing to do."

We do not think that appellees have an adequate remedy at law.   Their remedy in that court is not plain and adequate.   11 A. & E. Ency. (2d Ed.) 200, and cases cited.

The running of the corner on the board of trade, by which the exorbitant and fictitious price of sixty-four cents per bushel was fixed for oats, when the reasonable and actual price of that grain was then but thirty-eight cents

per bushel, was a violation of the criminal statute. One who seeks to avail himself of a crime and thereby to deprive another of his property, will be restrained in equity. This is true, whether he or another committed the crime by which he attempts to benefit himself. Farmers' & D. Ins. Co. v. German I. C., 79 Ky. 598. In such a case the legal rights of the complainant have been changed by fraud.

" The destructive effect of fraud upon any contract, conveyance, or other transaction, is so essential and far reaching, that no person, however free from any participation in the fraud, can avail himself of what has been obtained by the fraud of another, unless he is not only innocent, but has given some valuable consideration." 2 Pomeroy's Jurisp. (2d Ed.), Sec. 699.

See, also, Sec. 918, where the author lays down the following proposition:

" The remedy which equity gives to the defrauded person is most extensive. It reaches all those who were actually concerned in the fraud, all who directly and knowingly participated in its fruits," etc.

It is a familiar rule that courts of equity have concurrent jurisdiction with courts of law on questions of fraud. Grand Tower v. Walton, 150 Ill. 436.

We are of the opinion that the question as to the jurisdiction of a court of equity in a case like the one at bar is settled in this state.

In Ryan v. Cudahy, 157 Ill. 108, Ryan alleged in his bill the existence of a corner on the board of trade in short ribs during October, 1892, by which the price of that commodity was run up to $12 per hundred pounds, when the actual market value and price was but $7.60 per hundred; that he had made large sales of short ribs for October, 1892, delivery, and was unable to deliver on such sales except at such exorbitant price, because of such corner; that under the rules of the board he had made margin deposits upon such trades; that disputes having arisen between him and the defendants, Roloson & Co., concerning such differences, both parties had appeared before a committee appointed under section 6 of rule 20 of the board of trade, before

whom he, Ryan, offered to prove the legitimate market value of short ribs deliverable October 31, 1892; but all such offers of proof were rejected and were not considered by the committee; that the committee decided the margin deposits were payable to Roloson & Co. and that unless enjoined the defendants would so pay over such money. An *ex parte* temporary injunction was granted. The defendants demurred to the bill, which demurrer the court sustained and dismissed the bill. Ryan appealed.

Appellee contended that a court of equity had no jurisdiction to interfere with action of the board, or of its committees, citing People ex rel. Page v. Board of Trade, 45 Ill. 112; Fisher v. same, 80 Ill. 85, People ex rel. Rice v. same, 80 Ill. 134; Baxter v. same, 83 Ill. 146; Sturges v. same, 86 Ill. 441; and Pitcher v. same, 121 Ill. 412. The court admits that

"Language may have been used in some of the cases cited which might, without a close investigation of the questions involved in the cases, lead to the conclusion reached by counsel. But upon a careful consideration of the questions involved and decided in each case, it will be found that the question presented by this record did not arise in those cases and was not decided."

The court then states and differentiates each of these cases. Its conclusion is:

"If the allegations of complainant's bill are true—and they are admitted to be true by the demurrer—we are inclined to the opinion that he has made a case by his bill which entitled him to relief."

In the Ryan case the jurisdiction of the court was based upon the fact that the board turned him away without a proper hearing. In the bill at bar the jurisdiction of a court of equity arises from the fact that the defendants are about to dispose of the margin money in dispute, to the detriment of appellees, upon an exorbitant and fictitious price created by a corner, and under a by-law which, in that regard, is invalid.

After fully considering the whole case we are satisfied that a court of equity has jurisdiction of the matters here involved.

It is provided in the charter of the board of trade, by *section one*, that they may " make such rules, regulations and by-laws from time to time as they may think proper or necessary for the government of the corporation hereby created, not contrary to the laws of the land," and by *section four*, " The said corporation is hereby authorized to establish such rules, regulations and by-laws for the management of their business, and the mode in which it shall be transacted, as they may think proper," and by *section six*, " Said corporation shall have the right to admit or expel such persons as they may see fit, in manner to be prescribed by the rules, regulations and by-laws thereof." By *section seven* it is granted power to appoint committees " for the settlement of such matters of difference as may be voluntarily submitted for arbitration" by its members; and *section eight* gives to the final award upon such submission the force and effect of a judgment of a court of law.

Under these powers and other powers contained in such charter, and for the purpose of carrying them into effect, the board of trade adopted certain rules and by-laws which were in force May 15, 1902, and have ever since remained in force.

We do not wish to be understood as intending to interfere with the disciplinary powers of the board of trade. With the exercise of such powers we are not concerned. The corporation is the only tribunal having the right to decide whom it will admit to and whom it will expel from its membership.    It has full and exclusive power to discipline its members, free from the interference of any court, so long as in so doing it obeys its own lawful rules and regulations.    Ryan v. Board of Trade, *supra*.

The right of the corporation under section seven of its charter to appoint a committee which sits as a court, with the right to administer oaths and to compel the attendance of witnesses, and whose final award has the force and effect of the judgment of a court of law, in such matters of difference as are voluntarily submitted to them, is not here in issue.    It is well that one who stands convicted by a

tribunal of his own choice, should be estopped from questioning its judgment. Board of Trade v. Nelson, *supra*.

The only one of these rules or by-laws with which we are directly concerned in this case is rule 20, relating to "Deposits to secure the fulfillment of time contracts." These deposits were made by appellees and are held by the appellant bank. Section 6 of rule 20, in part, reads as follows :

"Sec. 6. Upon the fulfillment or settlement of any contract, or upon the closing of any contract under the provision of section 5 of this rule, deposits upon which have been made, and when the full adjustment of all differences relating to the same shall have been effected, the deposits shall thereupon be payable to the party depositing the same; and the joint indorsement of both parties upon the certificate shall be a sufficient authority to the party holding the deposit to pay the same to the holder of the certificate; or in case of a failure between the contracting parties to adjust and settle their respective claims upon the deposit within three (3) business days after the maturity of all contracts upon which the deposit is applicable, the matter in dispute shall, upon the application of either party to such contract, be submitted to a select committee of three disinterested persons, members of - the association, to be appointed by the president, which committee shall, without unnecessary delay, summon the party before them, and hear such evidence under oath as either may wish to submit touching their claims to the deposit, and shall by a majority vote decide and report to the president of the board, in writing, in what manner and to whom the deposit is payable, either wholly or in part; whereupon the president shall indorse on either the original or duplicate certificate an order for the payment of such deposits in accordance with the decision of said committee, and such order shall be a sufficient warranty to the party holding the deposit to pay the same in accordance with such order."

If it is in the power of the board of trade to enact and to enforce the part of this section above quoted, then the injunctional order of the court below must be reversed. On the other hand, if the corporation lacks such power, either because it is not granted by the charter, or because the exercise of such power is contrary to the law of the

land, then the order of the learned chancellor must be affirmed. A by-law of a corporation to be valid must be authorized by its charter. Section 7 of the charter does not give the corporation the power to pass section 6 of rule 20, because said section 7 relates solely to the determinaation of matters that are voluntarily submitted to the committee for decision. This section 7 is the only section of the charter that in direct terms gives any effective power of arbitration to the corporation. Nowhere in the charter is the power given, in express words or by necessary implication, to the board to pass upon the property rights of its members without their consent. Under the settled rules of construction of corporate powers, only those powers are conferred as are given in express words or by necessary implication.

"The charter of a corporation read in the light of any general laws which are applicable, is the measure of its powers, and the enumeration of those powers implies the exclusion of all others not fairly incidental." Central Tr. Co. v. Pullman P. C. Co., 139 U. S. 24; cited and adopted in Nat'l H. B. Ass'n v. Bank, 181 Ill. 41.

So far as section 6 of rule 20 requires compulsory submission of property rights, the corporation had no right to adopt it, for the General Assembly did not grant it that power.

Appellees having come into court praying for the ascertainment and protection of their property rights, and the court being the only body that can pass upon the questions here involved, the decree of the court below is right and should be affirmed.

MR. JUSTICE ADAMS: I concur in the decision in this cause, for the reasons that the case stated in the bill is within the jurisdiction of a court of equity; because the interposition of the court by temporary injunction is, in view of the facts stated in the bill, necessary to preserve appellees' rights; and because there is a dispute between the appellees and Canby & Co. in reference to their claims, respectively, to the deposit with appellant, evidenced by the

certificate of deposit, which dispute the board of trade can not, by its charter, determine against the will of one of the defendants, or otherwise than by their joint submission of such dispute to arbitration, as provided by section 7 of the charter of the board.