(No. 10974.—Decree affirmed.)    ·

EMILY C. WOODRUFF, Defendant in Error, *vs.* JOHN DAY, Plaintiff in Error.

*Opinion filed April 19, 1917.*

1. FRAUD—*when negligence of purchaser in examining land is no defense to a suit to set aside deed for fraud.* The fact that the purchaser of a large tract of western land went to see it before buying does not furnish the defense of negligence in her examination of the land when she subsequently brings suit to set aside the deed for fraud, where the evidence shows she was an aged woman having no knowledge of land or its value; that the three men who accompanied her, one of whom was her trusted agent, were all financially interested in selling the land, the agent being secretly in the vendor's employ; that they all made false representations as to the character and value of the land, which she believed; that she was on the land only about half an hour, during which time she was seated in an automobile, and that only a small portion of the land,—its best part,—was shown to her.

2. SAME—*when finding of chancellor as to misrepresentations in land deal will not be disturbed.* On writ of error to review a decree setting aside deeds because of material misrepresentations by the vendor, the finding of the chancellor that the representations were false and were known to be false at the time they were made will not be disturbed unless it is manifestly against the clear weight of the evidence.

WRIT OF ERROR to the Circuit Court of Winnebago county; the Hon. ARTHUR H. FROST, Judge, presiding.

JOHN A. RUSSELL, CHARLES W. FERGUSON, and FRANK C. MEYER, for plaintiff in error.

R. K. WELSH, and FISHER & NORTH, for defendant in error. ·

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the court:

On October 11, 1912, the defendant in error, Emily C. Woodruff, of the city of Rockford, Illinois, entered into a contract with plaintiff in error, John Day, of Lancaster,

Wisconsin, for the exchange of certain property which she owned, consisting of a flat-building in the city of Rockford and a 40-acre tract of land situated in Otero county, near LaJunta, Colorado, for 2840 acres of land situated about twenty miles south of Chadron, in Dawes county, Nebraska. Plaintiff in error's property was taken in the trade at $23 per acre, and defendant in error's flat property at $50,000, the LaJunta property at $5000, and she gave six promissory notes, each for $1000, payable on or before September 1, 1913, for the balance. Certain mortgages on the Nebraska property and the Rockford property were assumed by the respective purchasers. November 14, following, proper deeds of conveyance of the properties, together with the six notes provided for in the contract, were executed and delivered by the parties, respectively. Subsequently defendant in error discovered she had been swindled in the trade, and she filed her bill in chancery in the circuit court of Winnebago county asking to have the deeds made by her conveying the above mentioned property to plaintiff in error canceled and set aside and that said property be restored to her, at the same time offering to execute a proper deed of conveyance to return to plaintiff in error the property received by her in the trade. The fraud relied upon as vitiating the contract is that the land was fraudulently misrepresented to have a cash value of $23 per acre; that 250 acres of it was under cultivation, at least 175 acres in small grain and 60 acres in alfalfa; that there was no waste land in the tract; that it was of a like character as certain lands which were pointed out to her on the way to view the lands, and that it was rented for $1200 cash per year. Plaintiff in error answered the bill denying that such representations were made and relied upon the investigation and view of the property made by defendant in error as barring her right to relief in the premises. A trial was had before the court and a decree entered finding all the material issues in favor of defendant

in error and ordering that the deed made by her of the Rockford property be canceled and set aside, that she reconvey the Nebraska property to plaintiff in error and that the cause be referred to the master in chancery to take an account between the parties. This writ of error has been sued out to review that decree.

At the time of the transaction the defendant in error was an unmarried lady sixty-three years of age and had no knowledge of Nebraska land. She resided in the city of Rockford, where she owned a twelve-apartment building on North Church street. She was also the owner of a 40-acre tract of irrigated land situated in section 7, township 24, in Otero county, Colorado, near LaJunta, for which she had paid approximately $4800. The flat-building cost her approximately $36,000 to build in 1907. She was experiencing difficulty with tenants in her flat-property and concluded she would like to dispose of it for farm lands. She communicated this fact to D. A. Fuller, a real estate agent at Belvidere, Illinois, and through him met plaintiff in error, who came to Rockford and with Fuller examined the flat-property in the latter part of August, 1912. At this interview defendant in error informed them she valued her apartment building at $50,000. Plaintiff in error told her he thought it was not worth that much but that he would subsequently make her a proposition. Shortly thereafter plaintiff in error learned of some cheap lands near Chadron, Nebraska, and sent his brother, Fred Day, out to see this land, and he secured an option to sell it to his brother, John, at $9 per acre. He then returned to Lancaster, Wisconsin, and reported the situation to his brother, who thereupon wrote to Fuller, at Belvidere, on September 13, 1912, as follows:

"In regards to the proposition that I have been intending to make on the flat-building owned by the ladies at Rockford, will say that I can offer them 2840 acres described in book enclosed, at $23 per acre. There is 250 acres

under cultivation, 175 acres in small grain and 50 acres in alfalfa. There is not a foot of waste land on the entire tract. Our intentions was to retail this tract of land, but if we can dispose of it in a body I believe we prefer doing so. The price that I have stated above is strictly on cash basis, and I am taking your judgment as to the value of this building in Rockford. If it is not worth $50,000 I do not care to make the deal. We have a slight incumbrance on this land, but we can arrange terms satisfactory. I would have made you this proposition before, but I have other parties interested with me that are somewhat against dealing for city property. I am ready and willing at any time to show this land after Friday, September 20, as our fair is next week. The land is free from gravel, stone and sand or any bad defects whatever, with the exceptions of two small draws that cut into the land a short distance, which makes good drainage. Now, Mr. Fuller, you can see the owners of the building and advise them what I got. This land is located about twenty miles south of Chadron, Dawes county, Nebraska, but is closer to railroad on the southwest. I wish you would advise me as early as possible if they are interested and that if they will go to look this over."

This letter was at once forwarded to defendant in error, who placed such reliance on it that she was ready to make the trade without seeing the Nebraska land, and would have done so but for the insistence of Fuller and plaintiff in error that she first see the land for herself before trading. Accordingly, a few days later she met Fuller in Belvidere and went with him to see the land. Plaintiff in error was to have joined them on the trip but for some reason failed to make connections and wired his brother, Fred, who met them on the train leaving Omaha, and who so conducted himself with Fuller as to lead defendant in error to believe that they never met before and that neither had ever seen the land. Such was not the case, however,

as Fuller and Fred Day had met several times, and the latter was the one who had arranged for the option for the sale of the property to his brother at $9 per acre after making an examination of it. When the parties reached Chadron it was raining, and Day pretended to have trouble in securing anyone to take them out to the land and suggested putting off the trip until the next day, but defendant in error insisted upon going that day as she must get back home at once on account of the illness of her cousin, who was living with her. Day then secured W. A. Carmean, president of the Citizen's State Bank of Chadron and a creditor of Mitchell, the owner of the land, to take them out. He was interested in making the sale, also, to the extent of a dollar an acre which he was to receive as a commission for selling the land. The fact that Carmean was president of the bank and was interested in making the sale was not disclosed to defendant in error, as she was led to believe he was simply a chauffeur whom Day had chanced to secure to take them out to see the land. In going to the property they passed through what is spoken of as the "table lands," which are among the best farming lands in that county and have a valuation anywhere from $25 to $40 an acre, depending upon the improvements. The Mitchell property was situated several miles beyond these table lands and was not worth to exceed $9 per acre, the price plaintiff in error subsequently paid for it. As they were passing through the table lands Carmean told defendant in error that the lands she was going to see were just as good as those they were passing through. She believed this statement and relied upon it. He it was, also, who informed her when they had reached the Mitchell tract. Not knowing Carmean's interest in the transaction the defendant in error placed reliance upon his representations as to the character of the land. In the course of their drive across the land defendant in error's attention was called to an outcropping of gravel and was told by Carmean that it

was the only waste land on the tract. This was not true, as there were over 1100 acres of waste land in the tract. When they reached the house Carmean and Fuller got out of the car and Fuller pulled some grain from a shock and said to defendant in error, "That looks pretty good." They remained at the house but about twenty-five or thirty minutes, and as they drove away defendant in error noticed a gulch they had crossed in going to the house and was informed by Carmean it was not on this property but only touched it slightly and afforded good drainage for the tract. Aside from the small patch of gravel above referred to, defendant in error saw no sand, gravel, rock or other waste land on the property. She made practically no examination of the land, never got out of the car, and only obtained such a view of the land as could be seen in driving to and from the house in an automobile, with the side curtains on. Upon their return to Chadron defendant in error requested Fuller to make some further investigation as to the value of this tract, and he went out and later returned and told her that he had made inquiries from the president of one of the banks, a Mr. Pitman, who told him the land was worth as high as $20 an acre. Pitman, as a witness, testified that in his judgment the land was worth from $6 to $7.50 per acre, and we think the great weight of the evidence shows that this was the approximate value of such land.

While it is true, as contended by plaintiff in error, that when a person, in making an examination of property, neglects to avail himself of the means at hand equally open to both parties or to advise himself as to the true situation he cannot afterwards be heard to say that he was deceived by the misrepresentation of the other party, we think such rule has no application in a case of this character, where it is evident, from a consideration of all of the evidence, that practically no examination was made of the property

by the intended purchaser, that she was deceived as to the interests of the parties in the transaction with whom she was examining the property, was placing implicit confidence in the statements and representations made to her by them as to the nature and character of the land she was intending to purchase, and relied upon their statements and representations instead of the personal examination of the property which she was making. The alleged examination of the land in the case at bar was no examination at all. As disclosed by the evidence, the defendant in error knew almost nothing about land in that locality, was tired and worn out from her long journey, and was confused and deceived as to the actual location of the land by the statements and actions of the three men who accompanied her and who were all actively interested in and profited by carrying out this trade whereby she was defrauded. It can not be said that she was dealing at arm's length or on equal ground with the representatives of plaintiff in error. In such a case it is no defense to say, when the fraud is discovered, that the purchaser should have been more careful, or that she was negligent in relying upon the statements and representations made to her instead of making an independent examination to ascertain the truth as to such matters for herself. As said in *Leonard* v. *Springer,* 197 Ill. 532: "The rule is, that a party guilty of fraudulent conduct, whereby he induces another to act, will not be allowed to impute negligence to the latter as against his own deliberate fraud. 'Even where parties are dealing at arm's length, if one of them makes to the other a positive statement, upon which the other acts (with the knowledge of the party making such statement) in confidence of its truth, and such statement is known to be false by the party making it, such conduct is fraudulent, and from it the party guilty of fraud can take no benefit.'—*Linington* v. *Strong,* 107 Ill. 295."

That Fuller and plaintiff in error deceived defendant in error and knew that they were deceiving her we think is fully established by the evidence. They knew she was without experience in such matters and aimed to take advantage of such fact. They further knew she was a stranger in the community, had no knowledge as to the nature or character of the land she was to see or its value, and that she relied upon them to give her correct information in regard to such matters. They also knew that she trusted and relied upon Fuller in such matters, as she went so far as to send him out to inquire of others as to the value of this land, and he falsely reported back to her that he had been informed it was worth $20 per acre. They never disclosed to her that Fuller was working for Day and was to receive a commission of $1500 from him for putting the deal through. Had she known this, it does not seem reasonable that she would have trusted him to the extent that she did. They further permitted him to pass as her friend and adviser and to go with her to see the land and pretend to make an investigation of it, and he is described in the contract between her and Day as her agent, thus inducing her to believe that he had at all times been acting in her interest. This contract, in speaking of the property she is to convey to Day, states she is "to convey and assure to the said John Day * * * the tract of land and building thereon * * * known as the Woodruff flats, situated on North Church street, in Rockford, Winnebago county, and being the real estate shown to the said John Day by the said Emily Woodruff's agent in connection with this transaction and described as follows," describing the Woodruff flats by lot and block. The evidence shows conclusively that Fuller is the only one with whom Day examined that property, so this language could refer to no one other than Fuller. That Fuller was not acting in her interest cannot be denied, as it is undisputed that for some time prior to the making of this contract he was in the employ

of Day, working for him and for his interests, and was to, and did, receive from him, as his commission for putting the deal through, the sum of $1500. This contract bears unmistakable evidence that defendant in error was deceived as to Fuller's true attitude in this matter, and that both Fuller and Day knew that she was so deceived and intended that she should be.

The letter of September 13, 1912, also well illustrates the extent to which these parties were willing to go in their effort to cheat and defraud defendant in error out of her property. It is pregnant with false and misleading statements and so worded as to lead her to believe plaintiff in error was not only the owner of the land in question but also of other lands in that vicinity, that he was thoroughly familiar with the value of lands of this character, and that the cash value of the land in question was $23 per acre, or nearly three times what the evidence shows was its real market value. It is also so written as to convey the idea that plaintiff in error had other parties interested in the land with him who were opposed to dealing with it for city property; that it was free from stone, gravel, sand or any other defects whatsoever, except two small draws, which cut into it in such a manner as to afford good drainage for the balance of the land, and that there was practically no waste land whatever on the premises. That all of these statements were false and untrue, and known by him to be false and untrue at the time they were made, we think is fully established by the evidence. The trial court has so found, and we are not inclined to disturb that finding, as that court had the advantage of seeing the witnesses and hearing them testify and of observing their conduct and demeanor while on the witness stand. The rule is well established in this State that in such a case the findings of the chancellor will not be disturbed unless they are manifestly against the clear weight of the evidence. (*Bouton*

v. *Cameron,* 205 Ill. 50.) In addition to the matters above
stated, the court found that plaintiff in error further rep-
resented that the land was renting for $1200, cash, per
year, and that before entering into the contract in ques-
tion he made a separate agreement with defendant in error
to lease said land for her for one year for $1200, thereby
giving the impression that such was its fair rental value;
that she was taken to see the land by the agents of plaintiff
in error and shown but a small portion of it, and that the
best land on the premises, and not shown a large portion
of the gulches and draws or other unproductive parts of
said land; that she did not have ample opportunity to view
said land but relied upon the statements and representations
made to her by Day's agents that the same was all as good
land as that which had been shown to her on this and other
tracts through which they had passed, and that she had no
knowledge as to the true facts and condition of the land
other than as represented to her by them until after the
transaction was consummated. The court further found
that each of these representations was false and untrue and
known to be such at the time they were made. These rep-
resentations were as to material facts and not mere expres-
sions of opinion, and show a well defined scheme to cheat
and defraud defendant in error out of her property and are
of such a character as to render the whole transaction void.

It is insisted that defendant in error is not entitled to
the relief granted for the reason that she does not come
into a court of equity with clean hands. This contention
is based upon the fact that she put her LaJunta property in
at $5000 while the evidence shows that it was not worth
to exceed from $1500 to $2000, and her flat-property at
$50,000 when its actual cost of construction to her in 1907
was but $36,000. As we read the record, defendant in er-
ror did not undertake to say what the value of the Colo-
rado land was, but only that she had paid $4800 for it

some years before.   That such was the fact is not disputed. There was, therefore, no misrepresentation as to this property.   Nor do we think she misrepresented the character or condition of her Rockford property or its fair market value, as she did not undertake to state its present value but only the price at which she was holding it, and as she made no effort to deceive plaintiff in error as to any facts material to be known to him in regard to this property, she cannot be said to have taken any unfair advantage of him in the trade in that respect.

Complaint is made as to the form in which the decree is entered, in that it does not require plaintiff in error to re-convey the property to the defendant in error but orders that the deeds be canceled and surrendered and that she re-convey the property received by her from plaintiff in error to him after an accounting has been taken between the parties.   It is to be borne in mind that in addition to the land conveyed defendant in error also gave six promissory notes, each for $1000, to plaintiff in error, which she subsequently paid.   She is also entitled to receive the proceeds of these notes, and the court, after entering the decree fixing the rights of the parties, directed that an accounting be taken between them and referred the matter to the master to take an accounting of all such matters.   The court, therefore, has still retained jurisdiction of the cause, so that upon the coming in of the master's report it may make such further order in the final decree as is necessary to a full adjustment of all matters between the parties. For the reasons given, we think it unnecessary to notice these matters further at this time.

The decree of the circuit court will be affirmed.

*Decree affirmed.*