**Aaron Goldman and Dorothy Goldman, Appellants, v. Samuel B. Blanksten et al., Appellees.**

**Gen. No. 30,356.**

1. EQUITY—*instrument made part of original bill as included in amended bill subsequently filed.* Where in a suit to procure rescission of a contract for the purchase of real estate, the contract is made a part of the original bill, it thereby becomes part of an amended bill subsequently filed by complainants.

2. RESCISSION AND CANCELLATION—*sufficiency of bill.* Allegations in a bill to rescind a contract for the purchase of real estate and to secure a refund of earnest money paid to a third person for the benefit of the parties thereto, that at the time the contract was made the title to the property was in the third person, although falsely represented by him and the pretended vendors to be in them; that the said vendors falsely represented that they had recently purchased the property for a named sum; that such third party exhibited to complainants a pretended agreement on the part of the said vendors to purchase the property for such sum, thereby knowingly making a false representation; that such false representations were material inducements made to persuade complainants to purchase the property, and that complainants did not know of the falsity of such representations but relied upon them as true and were deceived by them, held sufficient, if proven, to justify an avoidance of the contract and a decree for the return of the earnest money.

3. EQUITY—*sufficiency of bill as against demurrer based upon possibility of adequate relief in action at law.* Where under the allegations of a bill in equity to secure rescission of a contract for

the purchase of real property and for the return of earnest money paid thereon to a third party for the benefit of the parties to the contract, complainants were entitled to a decree for the relief first mentioned as against the defendant vendors, and for the other relief as against the defendant third party, the bill was not subject to demurrer on the ground that the complainants had an adequate remedy at law, although there was then pending an action at law by the said vendors based upon an alleged breach of the contract aforesaid by the complainants.

Appeal by plaintiffs from the Circuit Court of Cook county; the Hon. Francis S. Wilson, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1925. Reversed and remanded. Opinion filed March 10, 1926. Rehearing denied March 24, 1926.

Benjamin I. Morris and Morris A. Mills, for appellants; Morris A. Mills, of counsel.

Lewis, Adler, Lederer & Kahn, for appellees.

Mr. Justice Taylor delivered the opinion of the Court.

The complainants, Aaron Goldman and Dorothy Goldman, having signed a contract for the purchase of certain real estate, and paid $4,000 as earnest money, and having discovered, as it is claimed, that the contract was brought about by the fraud of the defendants, filed an original bill of complaint, then an amended bill, asking that the contract be declared null and void, that the earnest money be returned to them, and that the defendants, the Kolkeys, be restrained from prosecuting a pending suit at law against the complainants for an alleged breach of the same contract. A general demurrer was filed by the defendants to the amended bill of complaint, and sustained, and a decree entered dismissing the bill for want of equity. This appeal is from that decree.

It is alleged in the amended bill of complaint, filed on February 24, 1925, as follows: that on April 9, 1924, the complainants entered into a written agree-

ment with the defendants, Nathan and Sarah Kolkey, to purchase from the Kolkeys certain Chicago real estate for $130,000, subject to about $98,250 of assumed incumbrances; that the complainants deposited $4,000 with the defendant, Blanksten, as earnest money, and agreed to pay, within five days after the title was found to be good, $16,000, and to execute a trust deed securing $11,750; that the deposit with the defendant Blanksten was for the mutual benefit of all parties to the agreement.

It is further alleged that they were induced to make the agreement through the fraudulent conspiracy of all three defendants; that prior to and at the time the contract was entered into, the title was in Blanksten; that that fact was known by the Kolkeys but not by the complainants; that the defendants represented to the complainants that the Kolkeys held title to the property; that to defraud the complainants, the defendants engaged certain real estate brokers to approach the complainants with a proposition that they should buy the property in question from the defendants.

It is further alleged that the Kolkeys represented that they had recently purchased the property for $125,000, and offered to prove that fact by showing the complainants the written contract of the purchase, and induced the complainants to go to the office of Blanksten, an attorney at law practicing in Chicago; that the complainants, having little experience in real estate matters, relied upon the representations made by the real estate agents of defendants, and having confidence in Blanksten, went with the Kolkeys, together with the real estate agents, to the office of Blanksten, who showed the complainants what purported to be an agreement, by which the Kolkeys agreed to purchase the property for the sum of $125,-000; that Blanksten at that time represented to the complainants that that agreement was an actual and

Goldman v. Blanksten et al., 240 Ill. App. 136.

*bona fide* one, and that the consideration for the purchase was $125,000; that that agreement was not an actual and *bona fide* one, but merely part of a conspiracy by which the defendants intended to defraud the complainants; that Blanksten acquired the property for the consideration of $90,000; that relying upon the representation made by the defendants that it cost the Kolkeys $125,000, and relying upon the representation made by Blanksten that he was not interested in the property, but was merely acting as a disinterested third party, they were induced to enter into the agreement to purchase the property from the Kolkeys for the sum of $130,000, and to deposit with Blanksten the $4,000, to be held by him for the mutual benefit of the complainants and the Kolkeys.

It is further alleged that the defendants, also, represented to the complainants that the rental for the premises, as represented by the actual *bona fide* leases, was not less than $20,500 per year, when, as a matter of fact, it was considerably less; that to defraud the complainants the defendants had entered into leases whereby the stipulated rentals were far in excess of the rentals actually paid by the tenants; that in order to disguise the fact that the tenants were not paying the rents stipulated in said leases large concessions had been given to the tenants.

It is further alleged that the Kolkeys were not interested in any way in the property in question, but were represented to be the owners for the purpose of furthering the scheme of the defendants to induce the complainants to rely upon the representation of Blanksten as a disinterested party, and to enter into the agreement and to make the above-mentioned deposit with Blanksten, well knowing that the complainants, not having had much experience in real estate matters, would rely upon the representation of an attorney at law, and would thereby be induced to enter into a contract of this kind more readily than if they

had known that Blanksten was the owner and held the title to the premises; that the complainants did rely upon the representation of Blanksten and upon his integrity and representation as an attorney at law.

It is further alleged that the complainants had no knowledge that the representations were false, and could not discover it until after an abstract of title was delivered to them, and after it was examined; that an examination showed that the title was in Blanksten; that the complainants then began to look into the matter and upon the discovery that the said leases on said premises were false, and that numerous concessions had been given, and that said Nathan Kolkey and Sarah Kolkey had not purchased said property, or agreed to purchase the same for the sum of $125,-000, or for any other sum, "demanded the return of the earnest money from Blanksten, but it was refused."

It is further alleged that, in furtherance of the scheme, there was filed in the circuit court a suit by the Kolkeys against the complainants for breach of contract; that that suit is not *bona fide,* but merely a device to carry out the scheme that the Kolkeys were the actual sellers of the property to the complainants, whereas, the Kolkeys have no interest in the property, and never purchased it, and do not intend to purchase or sell it, but are merely acting on behalf of Blanksten; that said suit was started for the purpose of harassing the complainants.

It is further alleged that the suit in the circuit court was started by the Kolkeys without curing the objections to the title shown in the opinion of title furnished to Blanksten, which opinion shows that certain taxes and assessments, and a judgment (which are recited in detail) were out against the property, and which shows that there were several judgments and decrees against one Samuel B. Blanksten.

The real estate contract, which was made part of

the original bill and so is part of the amended bill— *Becker v. Billings,* 304 Ill. 190—provides that it shall be the duty of Blanksten to apply the $4,000 of earnest money, "first, to the payment of any expenses incurred for the vendor by his agent in said matter, and second, to the payment to vendor's broker of a commission of $1,500.00 payable to the Independent Realty Company on the selling price herein mentioned, for his services in procuring this contract rendering the overplus to the vendor."

The prayer of the amended bill of complaint asks that the contract be declared null and void; that Blanksten be ordered to return the earnest money, and that the Kolkeys be restrained from prosecuting their suit in the circuit court.

It will be seen from the foregoing that, succinctly stated, it is alleged, *inter alia,* (1) that at the time, and before the contract was made, the title was in Blanksten, and the defendants falsely represented it was in the Kolkeys; (2) that the Kolkeys represented that they had recently bought the property for $125,000, which representation was false; (3) that Blanksten showed the complainants an agreement which purported to prove that the Kolkeys had agreed to purchase the property for $125,000, which was a false representation and known by the defendants to be so; (4) that the representations that were made were material inducements and were made to persuade the complainants to make the contract; and (5) that the complainants did not know those representations were false, but relied upon them as true, and were deceived by them.

To make out a case of fraud, the complainants must allege that the representations were false; that the defendants knew they were false; that they were material inducements to the making of the contract; that the complainants did not know they were false, and relied upon them as true. Applying those principles,

it follows quite obviously, we think, that the allegations of the original and amended bill of complaint made out such a case of active fraud as, if proven, would justify an avoidance of the contract and a return of the $4,000 of earnest money. *Whitney v. Roberts*, 22 Ill. 381; *Murray v. Tolman*, 162 Ill. 417; *Woodruff v. Day*, 278 Ill. 199.

The question then remains, and it is the one that is chiefly discussed in the briefs of counsel, whether the Kolkeys, having already brought suit at law in the circuit court against the complainants here, the Goldmans, for an alleged breach of the contract by them, the bill in this case, based on fraud, and seeking to avoid the contract in question and to obtain a return of the $4,000 earnest money, and enjoin the suit at law, will lie.

It is urged for the defendants that the complainants have an adequate remedy in their defense to the suit at law in the circuit court. The question arises then, whether the chancellor should have taken jurisdiction and enjoined the suit at law—which the complainants allege was not begun in good faith, but merely as a device to carry out the scheme that the Kolkeys were the actual sellers of the property to the complainants,—on the ground that the suit at law would not afford adequate relief to the complainants. Although fraud, such as is charged in the bill here, may be looked upon as a species of tort, and as such might give rise to an action at law, or to a defense at law, in which compensation could be claimed by way of damages, nevertheless, as stated by Black in his Treatise on Rescission and Cancellation, section 843, "this does not exclude the wider jurisdiction of equity under which a fraudulent transaction may be unraveled, the contract or transfer completely undone, and the parties restored to their former position." It has been held that a court of equity will take jurisdiction to avoid a multiplicity of suits (*Mohr v. Smith*, 178 Ill.

App. 64); to save a complainant from the expense of double litigation (*McHenry v. Hazard*, 45 N. Y. 580); where fraud and want of consideration, relied on as grounds for the cancellation of a deed, do not appear on the face of the deed (*Summers v. Abernathy*, 234 Mo. 156); and where there is want of capacity to make the contract in question. (*Jordan v. Kirkpatrick*, 159 Ill. App. 231.)

In *Metropolitan El. Ry. Co. v. Manhattan Ry. Co.*, 14 Abb. N. C. (N. Y.) 103, it was held that where the successful assertion of the complainant's rights required that a third person should be before the court and his rights adjudicated upon, as by the cancellation of a tripartite agreement, and he could not be joined as a defendant in any action at law, the complainant might then maintain a suit in equity. *Smith v. Bates Machine Co.*, 79 Ill. App. 519.

There are many cases of fraud where the parties imposed upon have an adequate remedy at law, and there are many where only equity would suffice. The cleavage between the two is frequently difficult to discover. As there is no standard or rule fixed or formulated, the facts of each case have to be analyzed and considered by themselves. The history of this subject is quite elaborately set forth by Mr. Justice Waterman in *Shenehon v. Illinois Life Ins. Co.*, 100 Ill. App. 281.

The technical question here, is whether there is something of substance which the complainants are entitled to by way of relief which cannot be obtainable in a suit at law. According to the charges in the amended bill of complaint, the complainants were entitled to a cancellation of the contract on the ground of fraud, and to be reimbursed for the $4,000 paid to Blanksten. Neither of those things can be obtained by the complainants in a suit against them at law in the circuit court. The agreement, although signed only by the complainants and the defendants, was a tri-

partite one. Having deposited the $4,000 with Blanksten for the use and benefit of all, there were created obligations on him to all the others, and corresponding rights in them as against him; and so he has to be considered in equity, at least, as a party to the contract. If the contract were to be declared a nullity on account of the fraud of Blanksten and the Kolkeys, the rights of the complainants could not be satisfactorily decreed, unless the decree ran also against Blanksten, as well as the Kolkeys, but in a suit at law, no matter what the judgment, the contract would still be outstanding and the judgment, whatever it was, would have no effect upon Blanksten. Obviously, therefore, a judgment at law could only be partial and not complete justice, and could not give the complainants what, in reality, according to their charge, they are entitled to. No judgment in a common-law suit could bring about the *status quo ante;* that could only be accomplished in equity, or by several suits at law; that is, by circuity of action. In equity, for the purpose of administering the remedy against the fraud, Blanksten, who assisted in the fraud, would be considered as a trustee, *ex maleficio,* and compelled to make restitution. *Wheeler v. Reynolds,* 66 N. Y. 227. In *Smith v. Bates Machine Co.,* 79 Ill. App. 519, the court said: "The jurisdiction in equity attaches, unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as sufficient as the remedy which equity would afford under the same circumstances." In 22 Cyc. 798, the law is stated as follows: "The existence of a defense at law does not make an injunction against the action at law improper when for any reason a court of equity is a more suitable tribunal for the determination of the matter or where equitable remedies, unavailable in the court of law, are necessary." In *Bank of Montreal v. Waite,* 105 Ill. App. 373, this court quoted with approval the

following language from 2 Pomeroy's Equity Jurisprudence, sec. 699:

"The remedy which equity gives to the defrauded person is most extensive. It reaches all those who were actually concerned in the fraud, all who directly and knowingly participated in its fruits."

Counsel for the defendants have cited many cases, but, bearing in mind the facts here involved, we do not find any of them in point. In our judgment, on the facts alleged, the complainants did not have an adequate remedy at law, and the demurrer should have been overruled.

It may not be inapt to say, though by way of digression, that it is to be regretted that our procedure is so antiquated that such a question as to jurisdiction may arise.

The decree will be reversed and the cause remanded with directions to overrule the demurrer.

*Reversed and remanded.*

THOMSON, P. J., and O'CONNOR, J., concur.