ISAAC N. MORRIS, Appellant, v. WILLIAM THOMAS, as Representative of the Bank of Illinois, &c., Appellee.

### APPEAL FROM GALLATIN.

In chancery proceedings a trustee may state facts explanatory of a transaction, and interpose denials and objections, with a view to negative his own transactions as charged, and to require full proofs of complainant.

Although a remedy at law may exist, yet if a complaint is one of equitable jurisdiction, chancery will sometimes take cognizance of it, where its aid is more effectual.

In matters of trust funds, &c., courts of law might enforce bargains, which equity would set aside, as being in violation of the trust.

Equity will not enforce an agreement made by a trustee in gross violation of his trust to take land in satisfaction of a judgment.

The power given the trustee, to close up the affairs of the Bank of Illinois, by making such settlements and compromises as he might deem most advantageous, is subject to the revision and control of a court of equity; which will inquire, not only into the good faith, but the propriety of his acts; revoking or confirming them at its discretion.

THIS was a bill in chancery exhibited by the appellant against said Thomas as representative of the Bank of Illinois.

The bill shows that the Bank of Illinois obtained a judgment at law against said Morris and others as his sureties, in the Gallatin Circuit Court at October term, 1843, upon which an execution was issued and levied upon certain lands of said Morris, which were not sold, and the execution returned; that afterwards a *vendi. exponas* issued directing the sale of the lands, which were situate in Adams county; that one Caldwell was appointed receiver of the Bank; that the act of 15th Feb., 1851, constituted Brown, Gillaspie and Caldwell, or whichever should give bond, the successor or successors of the assignees of the Bank; that Caldwell alone qualified; that Caldwell having authority so to do, appointed Onias C. Skinner his agent and attorney to settle and compromise said debt with said Morris; that said Morris did settle and pay said judgment to said Skinner, by conveying to said Bank the south-west quarter Sec. 14, T. 6 S., R. 6 west, situate in Pike county, and the payment in cash to said Skinner of $59.75, which is indorsed and receipted on said *venditioni exponas*; that afterwards, Caldwell having died, said Thomas was appointed Trustee of the Bank by the Circuit Court of United States, who sued out a further *venditioni exponas*, directing the sheriff of Adams county to sell the lands levied upon under the original execution; and that said Thomas knew that the judgment was satisfied.

The bill prays an injunction against said last *venditioni exponas*, which was granted.

The answer and amended answer admit the allegations of the bill, except that they deny that Caldwell had authority to receive the land in payment of the debt, alleging that the debt was secure, and that the land taken in compromise for it was of no value.

Depositions were taken going to show that the land was of small value, but failing to show that Morris had made any representations to Mr. Skinner, the agent of Caldwell, as to the value or character of the land taken in payment.

Thomas, as trustee, filed his answer; denying the authority of Caldwell to authorize the compromise; denying that he gave authority to make such compromise as was charged in the bill; denying that he gave any authority after his appointment as trustee; denying the authority of the legislature to authorize Caldwell to make compromise in such case; denying that this was a doubtful debt, or that there was any controversy for compromise; denying that the compromise was made with knowledge on the part of the attorney of the value of the land conveyed; denying that trust fund was bound by such compro-

mise, and denies ratification by Caldwell; averring that the land conveyed was of no value; denying that the conveyance of the land to the bank was, or could be, in any wise binding, and insisting that the complainant has a full and complete remedy at law, and therefore that he has no right to injunction.

The injunction was dissolved and the bill dismissed, by BAUGH, Judge, at December term, 1854, of the Gallatin Circuit Court.

The complainant appealed.

N. L. FREEMAN, for Appellant.

W. THOMAS, *Pro se.*

SCATES, C. J.    The offer to except to the amended answer and the depositions came too late at the trial term, when the answer and depositions had been on file near a year, and especially so, as the exceptions tendered are of a technical character, and the matters excepted to in nowise important in the determination of the equities between the parties.    Of like character we regard. the exceptions to the former answer, which were disallowed by the court.    The defendant may be allowed to state and insist upon principles of law, which his duty as the trustee of a fund requires him to assert for its protection; and for the purpose of showing that he does not waive any right of the *cestui que trust.*    So he may state facts explanatory of the transaction, and interpose denials and objections, with a view to require full proofs from complainant, and negative his own acquiescense in the transaction as charged.    The defendant is acting as a trustee for others, and is called upon to answer to transactions of a former trustee and his agents; in which he was not personally concerned, and of which he had no personal knowledge.    From one thus situated, we cannot exact such disclosures as would be called for from the party to the transaction.    The present defendant does not represent the former trustee, but the trust.    He has nothing to do with the obligation of his agreements, any further than they bind and are enforcible against the trust fund, and those interested in it; and we therefore recognize it, not only as his right but his duty to protect that interest against all improvident acts which sacrifice or waste it.

We do not think the defence set up in the answer, and insisted on here, that the party having a remedy at law, therefore, has none in equity, sustainable in this case.

The general proposition is true, and has been repeatedly recognized by this court; and has been applied and enforced in a variety of cases.    *Beard* v. *Foreman et el.,* Breese 303; *Robinson* v. *Chesseldine,* 4 Scam. R. 332; *State Bank* v. *Stanton,*

2 Gil. R. 352; *Woodward et al.* v. *Seely et al.*, 11 Ill. R. 162; *Ross* v. *Buchanan et al.*, 12 Ill. R. 58.

But if the complaint is one of equitable jurisdiction concurrent with a court of law, the court will exercise a sound discretion in assuming it. *Mason* v. *Piggott*, 11 Ill. R. 89; *Truett* v. *Wainwright et al.*, 4 Gil. R. 418; and will only refuse when the party not only has a remedy at law, but in which it is clear, complete, and effectual, as in equity. *Frazier* v. *Miller*, 16 Ill. 50.

The common law courts have the power to correct and prevent abuse of their process—to hear proofs of payment of their judgments—order satisfaction to be entered—and order a return of, and quash, executions issued to collect such satisfied judgments. Such motions have been repeatedly entertained, and the power recognized in other cases. *Beard* v. *Foreman et al.*, Breese R. 303; *Russell* v. *Hugunin et al.*, 1 Scam. R. 563; *Robinson* v. *Chesseldine*, 4 Scam. R. 332; *McHenry* v. *Watkins*, 12 Ill. R. 233; *Day et al.* v. *Graham*, 1 Gil. R. 435.

Yet, notwithstanding this power in courts of law to correct abuses, prevent oppression, and afford redress in many, we might say most, cases, circumstances may exist which require the party, as in the last case cited, to seek his redress in a court of equity; and in others it is more effectual, and therefore allowed. *Truett* v. *Wainwright et al.*, 4 Gil. 418; *Frazier* v. *Miller*, 16 Ill. R. 50; *Crawford* v. *Thurmond et al.*, 3 Leigh R. 87; *Christie* v. *Bogardus*, 1 Barb. Ch. R. 170.

The case before us is one peculiarly fit for a court of equity. The character of the fund, a trust, gives jurisdiction in questions arising out of its management and disposition. A court of law might inquire into and enforce bargains made in relation to it, while equity would set them aside as violations of the trust.

Such we regard as the character of the transaction before us. The aid of the court is invoked to enforce and carry into effect, by injunction, an agreement to take land in satisfaction of the judgment, which appears to us, under the proofs in the record, as a sacrifice of the interests of the *cestui que trusts* and the trust fund, and a gross violation of the trust.

We have already given our opinion in *Thomas, trustee*, v. *Sloo et al.*, 15 Ill. R. 66, that such an agreement is a violation of the trust, and not authorized or sanctioned by the laws under which the assignees and trustee are acting. That case came before the court with higher claims to consideration than this, as one assignee had agreed to and made the arrangement and another had formally sanctioned it afterwards. Here the arrangement has not been submitted to the approval of the trustee who authorized a settlement of the judgment with land,

and has been expressly rejected by his successor, the present defendant.

The former trustee, and those thus dealing with him, seem to have proceeded upon the ground that the power to "make such compromises and settlements as they may deem most advantageous to the said bank," conferred by Section 15, of act of 1845, p. 248, and repeated in the acts of 1851, p. 121, Sec. 4, "to make such compromises as they may deem proper of the debts due the said bank, having a due regard to the rights of the creditors of said bank," would enable and authorize him to make any settlement he might think proper without a power of revision and control, and that all such arrangements can be enforced in law or equity.

This is not the doctrine of courts of equity, more especially in those cases which need and call upon them for aid in their enforcement. The legislature never intended, by these provisions, to overturn all the well settled principles of equity in relation to trustees and trust estates, and give an unbridled, uncontrolled power, without revision. The power was conferred for the benefit of the trust and not of the debtors to it; it was given to secure and collect, not to waste, diminish, or delay its collection. The power to compromise and settle debts was intended to enable the trustee to secure and collect in cases of doubt, controversy, insolvency, and such like, and not a power to forgive the debt on being paid part, or of purchasing property at exorbitant prices in the name of payment. When such compromises and settlements are made, the trustee and parties to them must stand prepared to prove and show, when questioned, not simply that they were made in good faith, but that in good faith and truth they were the best arrangement for the benefit of the trust fund that could have been effected under the circumstances, or at least a fair and reasonable one. So I understand the meaning of these provisions of the statute. While I so understand them, I can never sanction such an arrangement as this, even when made with the most solemn sanction of the trustee, unless it be first approved by the court or the creditors and those interested in the fund. The trustee is not acting for himself but for the creditors and other owners of the fund; he must act for their interest and benefit, and be able to make his acts appear to be fair, and calculated to promote that interest. Where judgment has been rendered for the debt and property amply sufficient to pay it has been levied upon, and in cases where the debt is amply secured by mortgage or otherwise, there is no room for compromise in the sense of abandoning part of the claim or purchasing in payment. Under such circumstances the simple duty of the trustee is to enforce

the collection and payment of the debt, without resorting to or hazarding speculative bargains. If the trustee were authorized or justified in taking real estate in payment, under circumstances like these in the record, still we should unhesitatingly disapprove any bargain he might make upon terms so inadequate. The land is proven to be of very little value and unsaleable. The duty of the trustee, and the interest of the creditors of this fund, alike demanded a sale of the lands levied upon if the debt were not paid. It is not a case in which he was authorized to purchase land in payment, unless compelled to do so to secure the debt by bidding under the execution. We are therefore of opinion that the bill was properly dismissed, with cost and damages. Neither the deed nor money has been accepted by the trustee, being offered in execution of the arrangement. The money would be good payment to that extent, and if the parts of the transaction are separated, the complainant will find ample redress by a motion to the court of law to restrain the collection again of that amount if attempted. There is no ground for a partial decree or injunction on part payment.

Decree is not for as much damage as the statute allows.

*Decree affirmed.*