Henry D. Laughlin v. Paul Brauer, Administrator.

Gen. No. 12,514.

1. Husband and wife—*right of one to prefer the other.* The husband may in good faith lawfully prefer his wife, and discharge any legal subsisting *bona fide* obligation to her, even if he thereby devotes to the payment of her demands the only property to which other creditors may resort for payment of their claims.

2. Jurisdiction—*what does not oust court of equity.* Equity is not ousted of jurisdiction to grant relief with regard to a matter for which a remedy may exist at law, merely because it has found on the evidence against the allegations of the bill with respect to a matter of purely equitable cognizance.

3. Master in chancery—*when reference to, discretionary.* It is within the discretion of the chancellor to refer or to refuse to refer to a master a proceeding in accounting, where the matter of stating the account is not complicated.

4. Evidence—*when book entries competent. Held,* that certain book entries shown in this case were competent as showing the course and manner of the transactions involved.

5. Evidence—*when with respect to checks competent. Held,* that where the original checks have been destroyed, it is competent to permit a witness to testify with respect thereto, using for purposes of refreshment of memory, the stubs of such checks.

Bill for specific performance, etc. Appeal from the Circuit Court of Cook county; the Hon. Lockwood Honore, Judge, presiding.

Heard in the Branch Appellate Court at the October term, 1905.
Affirmed.   Opinion filed January 28, 1908.

Statement by the Court.   Appellee's intestate, Mrs.
Sarah Eden, in her lifetime filed a bill of complaint
in the Circuit Court April 22, 1901, against appellee
Laughlin and others, and from a decree in her favor
this appeal is prosecuted.

The bill alleges, among other things, the formation,
January 20, 1890, of a corporation known as the North-
ern Hotel Company, with a capital of $700,000 repre-
sented by 7,000 shares of $100 each; that said corpora-
tion constructed the Great Northern Hotel in Chicago,
which it completed and opened June 15, 1892; that
thereupon it executed to William S. Eden, husband of
complainant, a lease of said hotel building for twenty
years; that the building was maintained and operated
as a hotel by said lessee until about December, 1899;
that said lessees furnished and equipped the hotel with
furniture and appliances of the value of about $400,-
000; that about December 19, 1899, complainant be-
came owner of about 400 shares of said Northern Hotel
Company's stock, and that for a number of years she
was owner of 532 shares of said stock, which was held
in the name of said William S. Eden, her husband.

It is further alleged that on or about December,
1899, the defendant Laughlin proposed to said William
S. Eden that they purchase a controlling interest or
majority of the stock of said Northern Hotel Com-
pany; that thereupon complainant was induced by said
Laughlin, who pretended he would advance $150,000
to enable her so to do, to purchase outstanding stock
which was then selling at from thirty-five to fifty-five
per cent. of the face value, and that she did, with the
assistance of said Laughlin, purchase about 4,000
shares of said stock, in addition to what complainant
then owned, which stock so purchased was taken in the
name of said Laughlin, but nevertheless in trust for
complainant as to one-half thereof; that instead of
advancing and paying out $150,000 in buying such con-

trolling interest, said Laughlin paid not to exceed one-half of that amount; that complainant and her said husband assigned to Laughlin the certificates of stock held by them, under a verbal agreement in substance as follows:

Complainant agreed to cause to be transferred to said Laughlin the stock so held by herself and her husband; that she would cause the lease of the hotel held by her husband and others to be remised to the Northern Hotel Company, that she would cause all the furnishings and equipment of the hotel to be transferred to said Northern Hotel Company, and that she would furnish such sums of money as she was able toward the purchase of a controlling interest in the said Northern Hotel Company; that on the other hand Laughlin agreed that he would honorably hold the stock so transferred to him by complainant and her husband in trust for complainant, that he would furnish $150,000 to be used in the purchase of a controlling interest in said Northern Hotel Company, that the stock so purchased should be placed on the books of the company in the name of said Laughlin, that the stock so caused to be transferred to Laughlin by complainant and her husband, together with that purchased, were to be owned and shared by complainant and Laughlin, share and share alike; that it was further agreed that Laughlin should be elected president of the Northern Hotel Company when such control of the corporation had been secured, and that complainant's husband, William S. Eden, as representative of complainant, should be elected vice-president and managing director, the salaries of Laughlin and Eden to be the same in amount.

It is further alleged that in conformity with said verbal agreement, complainant caused her stock to be transferred to Laughlin, the lease to be remised to the Northern Hotel Company, the furniture and equipment of the hotel to be transferred to the corporation, and that she advanced to said Laughlin in and about

the purchase of stock the sum of $30,000 until about 4,000 additional shares had been so purchased by complainant and Laughlin, which were transferred to his name upon the books of the Northern Hotel Company; that Laughlin and Eden were on May 1, 1900, elected president and vice-president respectively of the company, each with a salary of $12,000, together with apartments in the hotel and living expenses without charge.

It is alleged that under the management of Eden the hotel greatly prospered, debts were paid off and the value of the stock greatly increased, but that Laughlin, who was without hotel experience, so interfered with the management of the hotel that the profits were diminished, and that on April 3, 1901, without complainant's consent, said Laughlin ousted complainant's said husband, William S. Eden, from his position as manager of said hotel and that he is now conducting the hotel himself through an employe, who is likewise inexperienced and in such manner as to impair complainant's property interest in said hotel; that he neglects and refuses to consult complainant or her representative, that he has negotiated and made sales of the stock held by him in trust, is borrowing money on such stock and using the proceeds for his private purposes, refusing to account therefor to complainant, that he has made an agreement to lease the hotel, having no authority so to do; that he pretends to be sole owner of all the shares standing in his name and that complainant has no interest therein.

The bill prays for specific performance of the alleged verbal agreement, that Laughlin be decreed to account to complainant for her share of the stock held by him in trust for her under said agreement, to transfer to complainant her share of said stock and in all other respects perform; that the said defendants be restrained from leasing or encumbering the hotel property and enjoined from voting the stock, and from interfering with complainant's right of possession of

certain rooms occupied by herself and husband. There is a prayer for such other and further relief as equity may require or as to the court may seem meet.

Defendant Laughlin answered, denying material allegations of the bill and setting out his version of the facts as to the leases of the hotel to Eden and others. Material allegations of the answer are in substance that in November, 1899, said Eden urged defendant to buy a controlling interest in the stock of the hotel company as a good investment and to make Eden manager of the hotel; that he told Eden eventually that upon certain conditions not now material to the controversy he would buy a majority of said stock if it could be obtained at prices not exceeding what defendant thought it worth; that subsequently, rather than have defendant put in an assistant manager who would loan defendant money to complete his purchase of said stock, Eden agreed to procure a loan to the extent of $30,000 for defendant from certain of Eden's friends, to be used by defendant in making the purchase of said stock. Defendant states that Eden did procure from certain of his friends, who, as defendant is informed and believes, were F. W. Bipper, since deceased, Owen H. Fay, J. H. Dimery and Fred H. Smith, a loan to defendant, "the amount of which defendant is unable to state, for the reason that the checks for said sums were to be vouchers to the said persons loaning the said money," which defendant has been unable to obtain, "and, so far as this defendant knows, the said sums are still due to said persons so loaning the money." Defendant denies, however, on information and belief, that such loans have been returned or paid by complainant. He states that with his own money and the money so borrowed he purchased shares of stock sufficient, with the stock held by complainant and her husband, for his purpose, and that in February, 1900, he bought from Eden said last mentioned stock and paid for it. Defendant denies that any stock was purchased by him in trust for com-

plainant, and states that he purchased a large number of shares on his own account and for his own purposes. Defendant further answers, alleging that May 31, 1900, a lease of the hotel to said Eden and one Hurlbut was forfeited for non-payment of the rent, then largely in arrears; that defendant caused Eden to be discharged, as he alleges, for incompetency. He denies that complainant is entitled to relief as prayed for and denies that she has any claim to or interest in or to the capital stock of the Northern Hotel Company.

An intervening petition was filed by the Chicago Title & Trust Company setting up its appointment as trustee in bankruptcy of William S. Eden by the District Court of the United States for the Northern District of Illinois, and praying that whatever sum of money may be found due from defendant Laughlin to complainant, Sarah Eden, may be found due to her as trustee for said bankrupt and payable to the intervening petitioner.

Upon the hearing after a very considerable amount of evidence was introduced, leave was granted complainant to amend her bill *instanter,* which was done. The amendment changes the first paragraph of the prayer of the bill and asks that defendant Laughlin be required to account to complainant for the stock sold by him and the proceeds thereof, and "also for the moneys advanced by your oratrix for the purchase of stock as aforesaid."

June 4, 1904, the Circuit Court entered an interlocutory decree finding that defendant and complainant did not enter into an oral contract such as is set out in the complainant's bill, that Laughlin did not agree to assign to complainant one-half of whatever stock of the Northern Hotel Company he might purchase, that defendant is the owner of the stock so purchased by him and that complainant had and has no partnership nor other interest therein. The court further found, however, that defendant Laughlin is "indebted to complainant Sarah Eden in certain sums of money,

the aggregate amount of which is to be hereafter ascertained,'' and that said indebtedness arose by virtue of the following circumstances: Said complainant, Sarah Eden, was the owner of all the shares of a certain corporation known as the Great Northern Baths, except two shares which were issued to other persons to qualify them to act as directors. Said corporation made considerable earnings, as the result of which dividends were declared, but instead of turning over to the said Sarah Eden in cash the amounts to which she was entitled as dividends, the said corporation executed to the said Sarah Eden its notes, and the money which was due to her from this source was left within the control and dominion of her husband, William S. Eden. Under these circumstances, said William S. Eden made a series of loans of such money to the defendant, Henry D. Laughlin, for the purpose of assisting the said Laughlin to buy stock in the Northern Hotel Company. Said Laughlin was informed that the money which was being loaned to him was the money of the said Sarah Eden and accepted it as such, and the said Sarah Eden was informed that her said money had been loaned to said Laughlin and she acquiesced in and ratified said transactions so that the relation of debtor and creditor was established between said Henry D. Laughlin and said Sarah Eden.

The court thereupon directed an accounting to ascertain the amount owing by defendant Laughlin to complainant. Defendant moved to refer the cause to a master in chancery to state the account. The motion was denied and it was ordered that the matter of said accounting be set for hearing before the court.

Subsequently, December 21, 1904, a supplementary interlocutory decree was entered substantially like the former decree, but finding in addition that the intervening petitioner, the Chicago Title and Trust Company, trustee in bankruptcy of W. S. Eden, has no interest in the amount due from Laughlin on the loans made to him through complainant's husband, and said

intervening petitioner is dismissed out of the case. It was ordered therefore that complainant recover of Henry D. Laughlin whatever sum may be found due and owing by him on account of said loans so made to him out of the funds of the complainant in and about the purchase of stock in the Northern Hotel Company to be ascertained from the evidence heard and such other evidence as might be necessary to ascertain the exact amount. No further evidence was, however, introduced, and January 27, 1905, the court entered a further decree upon the evidence before it, in and by which decree each separate item of money advanced to defendant Laughlin by or in behalf of complainant and found due the latter from said defendant Laughlin is stated in manner as follows:

"1. That on or about December 12, 1899, the said defendant received from T. W. Wilmarth Co., through W. S. Eden, the sum of four hundred and seventy-five ($475) dollars, which said sum was on or about December 12, 1899, repaid to said T. W. Wilmarth Co., by the Great Northern Hotel Company, and by it charged to the Great Northern Baths, on account, which in turn on the same date charged said amount to the account of Sarah Eden, as a credit upon its certain notes held by said Sarah Eden, as heretofore found, and that said complainant Sarah Eden is entitled to recover of the said defendant, Henry D. Laughlin, the said sum of four hundred and seventy-five ($475) dollars, together with interest thereon at the rate of 5 per cent. per annum from December 12, 1899, to January 20, 1905, amounting to one hundred and twenty-one ($121.37) dollars and thirty-seven cents, making a total amount of five hundred and ninety-six ($596.37) dollars and thirty-seven cents."

In substantially the same way the account is stated as to the remaining thirty-five items found to have been received by defendant and due from him to complainant. These items, with interest, aggregate $31,-905.09. The court therefore finds from the evidence that the defendant, Henry D. Laughlin, is indebted to the complainant, Sarah Eden, in that sum.

Upon the ninth of March, 1905, a final decree was entered finding that the original complainant "Sarah Eden departed this life February 15, 1905," and that Paul Brauer had been duly appointed and had qualified as administrator of her estate. He was thereupon substituted as complainant. Said final decree refers to the former orders entered, which it ratifies and confirms, dismisses for want of equity the intervening petition of the trustee in bankruptcy and orders that complainant recover of defendant, Henry D. Laughlin, the said sum of $31,905.09, with interest thereon at the rate of five per centum per annum from January 20, 1905. From this decree the defendant Laughlin appeals.

SHOPE, MATHIS, ZANE & WEBER, for appellant.

LONGENECKER & LONGENECKER and WILLIAM J. CANDLISH, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

The record in this case is voluminous and numerous errors are assigned. Much evidence was taken upon the alleged verbal agreement between the complainant, Sarah Eden, and the defendant, Laughlin, by virtue of which said complainant claimed a half interest in stock of the Northern Hotel Company held in the name of said defendant. The Circuit Court having found that the evidence failed to establish the existence of such an agreement and that Laughlin is the owner of the stock in question, and appellee having assigned no cross errors, it is not necessary to review that phase of the case.

It is, however, upon evidence introduced on the one side in support of the contention that Laughlin purchased that stock—in part with money advanced by her—for the benefit of himself and complainant and holds half of it in trust for her, and upon the other,

in contradiction of complainant's said contention, that the final decree was entered from which this appeal is prosecuted. It is not, however, necessary to review this mass of evidence in detail. Appellant Laughlin admits in his answer to the bill that he owes someone for money which he concedes was advanced to him at the instance of William S. Eden, husband of complainant, for the purchase of the stock of the Northern Hotel Company in question,. He is unable, however, he says, to state the amount of his indebtedness on that account, nor does he know to whom it is payable, although nearly three years had elapsed since he received the money.

(1) The decree appealed from finds appellant indebted to appellee to the extent of $31,905.09, with interest from January 20, 1905. The circumstances under which this obligation is claimed to have arisen appear, so far as material, to be substantially as follows: Having concluded to try to buy up enough stock of the Northern Hotel Company to control that corporation, appellant Laughlin found it necessary to obtain more money than he had available at the time. His relations with W. S. Eden, complainant's husband, and with complainant were then apparently amicable, and Eden undertook to assist him in securing control of that company. Appellant's version of the circumstances tends to show that this aid was obtained from the Edens through some pressure which appellant brought to bear, and there is evidence in behalf of appellee tending to show that there were other reasons, which it is not now necessary to consider. Eden at the time was manager of the Great Northern Hotel under a lease from the owner, the Northern Hotel Company. He had been manager of the hotel for more than five years when, according to appellant's statement, in November or December, 1899, appellant concluded to buy up the controlling interest in the stock of said Northern Hotel Company. This company, which owned the hotel, is to be distinguished from the Great

Northern Hotel Company, which operated the hotel and
which was organized by W. S. Eden, who owned its
capital stock. This latter corporation had been the
instrumentality through or by means of which Eden
operated the hotel from early in 1896. There was also
a third corporation, the Great Northern Baths, which
had been organized more than two years before, the
capital stock of which was held by the complainant,
Sarah Eden. Whatever the reasons may have been,
Eden apparently undertook to procure through some
of his personal friends money to be advanced to appel-
lant. The sum desired by appellant was $30,000. The
latter states upon information and belief that these
friends of Eden were F. W. Bipper, Owen H. Fay,
J. H. Dimery and Fred H. Smith. The money, or
much of it, was paid to appellant from time to time
on checks drawn by these parties.

The same bookkeeper kept the books of all three of
the above mentioned corporations. Her testimony
tends to show that there were transactions noted on
the books of the Great Northern Hotel Company with
persons named Bipper, Fay, Wilmarth, Friedman,
Keiler & Co., and perhaps other parties in the like
series of transactions. Some of these are the parties
above referred to mentioned by appellant Laughlin in
his answer. Appellant received money on their checks,
but the amounts were promptly repaid to them. In
other words, those checks were merely accommodation
checks given Eden and which he turned over to appel-
lant, giving back to the accommodation drawers checks
of the Great Northern Hotel Company drawn for the
same sums. In some cases Eden gave his own notes
for the amounts represented by the accommodation
checks, which notes were subsequently paid by the
Great Northern Hotel Company. The amounts so paid
by the latter company were charged by it against the
Great Northern Baths, and by the latter in turn
charged against the complainant, Sarah Eden. The
apparent reason for this circuitous procedure seems

to have been in part and primarily to enable appellant Laughlin to conceal from certain parties interested the fact that he was receiving money out of funds in the hands of the Great Northern Hotel Company which he was using to buy up stock of the Northern Hotel Company. The result of these transactions and entries was that the money thus advanced to appellant was eventually paid to him out of money derived from the earnings of the Great Northern Baths.

The Great Northern Baths was a corporation which had been organized in March, 1897, more than two years before these advances were made to appellant. W. S. Eden had at that time a lease of the ground upon which said "Baths" was erected. He organized the corporation with a capital stock of $50,000, all but two shares of which were issued to complainant, Sarah Eden, in her own name. The said stock was fully paid by the conveyance to the corporation of the "Baths," which had been erected by W. S. Eden for his wife, the complainant. Eden testifies that in this way he repaid to his wife considerable sums of money which he then owed her; that he had at that time over $30,000 of her money in his business which she had lent to him, and that he raised additional sums from the sale of life insurance, real estate and in other ways. He testifies that Mrs. Eden was his assistant in the hotel business, that she "worked harder than I did" and gave him "money right along"; that she was "earning money right along and was a money saver," and that "probably she has given me forty or fifty thousand dollars, all told." Complainant herself testifies that all her money went into the Baths, that she owned that establishment and that no one else ever owned it. Her husband also says "it was Mrs. Eden's money and we owed her the money and I wanted to pay her and I had to get the money for Laughlin in some way. The Great Northern Hotel owed her money. Mrs. Eden was the Great Northern Baths and nobody else. She owned everything that was there." Mrs. Eden

had the care of the baths and saw to everything that was needed in their management. She testifies—and her evidence in this respect is corroborated by other evidence and is not contradicted—that the money which came in daily from the Great Northern Baths was put into the Great Northern Hotel, that she never had any of it, but kept letting her husband, who was running the hotel, have money. Eden testifies that "at that day I was not owing any money to anybody and I had a perfect right to give my wife that Baths."

(2) It is urged in behalf of appellant Laughlin that the Baths were paid for by Eden out of money belonging to the Great Northern Hotel Company, the operating company controlled by Eden. The contention is that at that time Eden and the Great Northern Hotel Company were indebted to the Northern Hotel Company for rent; that the Great Northern Baths belonged to the Great Northern Hotel Company, and that the money of the latter could not be appropriated and given to Mrs. Eden, to the prejudice, it is said, of the Northern Hotel Company, its heaviest creditor; that even if the property was Eden's and did not belong to the Great Northern Hotel Company, he could not give away his property, to the prejudice of his creditors. The alleged creditor, Northern Hotel Company, however, has never complained and is not here complaining now, assuming that it could be heard to do so after years of acquiescence with full knowledge of title and possession in complainant, Sarah Eden. It has never claimed to have—and, so far as appears, never had—any interest in the money which erected the baths, except that it is now claimed there was money due it for rent from the Great Northern Hotel Company. But it appears from the evidence that the latter owed Mrs. Eden also large sums of money which it was at least equally bound to pay, and it is rather late in the day now to set up an unasserted claim of another as a reason why appellant should not pay his own debt. As above stated, there is evidence

amply sufficient tending to show that the earnings of the "Baths" were daily turned over to the Great Northern Hotel Company and used in its business. These earnings were considerable. The "Baths" was making money. In April, 1898, that corporation declared a dividend of twenty-five per cent.; the next year a dividend of at least eighteen per cent.—according to some of the testimony, twenty-five per cent. The year following there was a dividend declared of seven per cent.—according to another witness, twenty per cent. As the earnings of the "Baths" had all this time been turned over to the Great Northern Hotel Company, the "Baths" had no money on hand to pay these dividends, Mrs. Eden's share of which, at the lowest of the estimates, aggregated at least $24,900. Instead of cash, she was given notes of the "Baths" for the amount thus due her as dividends. Appellant's counsel objected to the testimony tending to show that such notes were given, on the ground that the notes themselves were the only competent evidence. It was shown they had been left at complainant's home in another state, and we are of opinion it was not improper, under the circumstances, to admit evidence tending to show that such notes had been given complainant for the amounts due her as dividends. In any event, such evidence was only cumulative, there being other evidence not contradicted tending to show that such dividends were due Mrs. Eden.

(3) We conclude from the evidence, first, that Mrs. Eden owned the stock of the Great Northern Baths under a title ante-dating the transactions in controversy between appellant and Mrs. Eden, the complainant, as to which what is said in Earl v. Earl, 186 Ill. 370-374, is in point: "The husband may in good faith lawfully prefer the wife and discharge any legally subsisting *bona fide* indebtedness to her, even if he thereby devotes to the payment of her demands the only property to which other creditors may resort for payment of their claims." See, also, Dean v. Plane,

195 Ill. 495-500-1. We discover no equity in whatever claim, if any, the Northern Hotel Company had for rent at the time of the erection of the "Baths," which is in any way superior to the equity of complainant for money due her at that time. Second, the Great Northern Hotel Company was at the time of the advances in controversy to appellant Laughlin, indebted to complainant in a large sum of money, apparently exceeding the amount found due by the decree appealed from. Third, the Great Northern Hotel Company paid to Bipper, Fay, Smith, Dimery and others the sums received by appellant Laughlin on their checks respectively, and charged the amounts so paid to the Great Northern Baths. Fourth, the amounts so charged were by the Baths charged to Mrs. Eden, the complainant, who thus became the actual lender of the money in controversy and entitled to recover it from appellant Laughlin. Fifth, there is evidence tending to show that appellant Laughlin was informed how the entries and charges as to this money so advanced to him were being made at the time, and knew that the money was in fact received by him from complainant Sarah Eden. This he denies. The chancellor, however, evidently gave credence to the testimony of Mr. and Mrs. Eden and of Mrs. Sullivan, the bookkeeper, instead of to appellant's contradictory testimony, and in this we find no error.

(4) Appellant urges that "When the court had found that no contract as to the purchase of the stock had ever been entered into, and had found that the sole cause of action of complainant against defendant was merely for money loaned, it was the duty of the court to have dismissed the bill, because (1) the court had no jurisdiction in equity to adjudicate a cause of action purely legal, and (2) the recovery would be based upon a cause of action wholly antagonistic to the cause of action alleged and the relief prayed in the bill." We do not concur in these contentions. The bill alleges that the stock bought up by Laughlin was "purchased

by money furnished by the said Henry D. Laughlin and complainant until about four thousand (4,000) shares of stock in addition to what complainant then and there owned'' was so purchased. The bill as amended prays that Laughlin may be decreed to account for stock sold by him and its proceeds ''and also for the stock remaining in his hands, and also for the moneys advanced by your oratrix for the purchase of stock as aforesaid.'' The bill in effect charges, and there is evidence tending to show, the stock in question was purchased in part with money furnished by complainant for that purpose, the amount of which could only be determined by an accounting. While the court found that Laughlin was not liable to account to complainant for a half interest in the stock itself by virtue of the alleged verbal agreement, he was liable to account to her for money used in its acquisition. The bill charged that complainant had not only furnished money, but had caused the surrender of a lease and the conveyance of the hotel furniture to be made to the corporation, thereby increasing the value of the stock which she helped Laughlin to buy. Her money having gone into its purchase, might very well create a trust in the stock, or some of it, for her benefit by operation of law. While it may be that complainant proved no definite agreement entitling her to the ownership of half the stock, and creating an express trust in her behalf, it appears, we think, from the bill and from the evidence that the adverse finding in that regard did not remove from the bill all grounds for equitable relief. At all events, the court had jurisdiction of the subject-matter and the parties. It would be but a lame and impotent conclusion if, after hearing so much evidence upon a conceded matter of equity jurisdiction, the court should shut its eyes and refuse to grant such relief as the evidence showed complainant to be entitled to, merely because some relief might have been had at law. It would be neither just nor equitable in any

sense to put complainant to the delay and additional expense of presenting over again in a court of law the voluminous evidence already before the chancellor. In Braithwaite v. Henneberry, 222 Ill. 50-53, it is said: "It is the rule that when a court of equity acquires jurisdiction over a cause requiring any equitable relief, the court may retain the cause for all purposes and establish legal rights and provide legal remedies which would otherwise be beyond the scope of its authority. In such case the Court will not ordinarily limit itself to the execution of partial justice and turn the parties over to a court of law, but will go on and dispose of all the matter at issue so as to do adequate and complete justice between all the parties. Whether the court will so proceed is a matter for the exercise of sound discretion which is subject to review, and which will ordinarily be exercised by retaining the cause and granting any necessary legal remedies." It is further said in that case that "there was a general prayer for relief and if a bill contains averments of specific facts which authorize the granting of certain relief it may be granted under a general prayer." Defendant in his answer admitted that he owed someone for money so advanced to him for the purchase of the stock, but denied that it was due to complainant. The tracing of the money to its source involved an investigation of transactions conceded to have been purposely obscured at the instance of appellant and for his benefit. It would have been an abuse of judicial discretion in this case to dismiss the bill and relegate the parties to a court of law. It is said in Smith v. Bates Machine Co., 79 Ill. App. 519-526: "Appellee may have a remedy at law, but in the nature of things it could not have been as full, adequate and complete as in a court of equity. The jurisdiction in equity attaches unless the legal remedy, both in respect to the final relief and the mode of obtaining it, is as efficient as the remedy which equity would afford under the same circumstances." Gormley v. Clark, 134 U. S. 338;

Kilbourne v. Sunderland, 130 *ib.* 505; *Idem,* 182 Ill.
166-169. See, also, Morris v. Thomas, 17 Ill. 112-114-
115; Tunesma v. Schuttler, 114 Ill. 156-163, 164; Grand
Tower v. Walton, 150 Ill. 428-436; Gage v. Parker, 103
Ill. 528-534. We are of opinion the chancellor prop-
erly retained the bill and allowed the amendment to
the prayer.

(5) It is insisted by counsel for appellee that the
court erred in refusing to refer the cause to a master
upon the motion of defendant's counsel, and that it
was error to decree an account upon the evidence
already before the court without such reference. As
we have stated, no new evidence was produced by
either party upon statement of the account. An inter-
locutory decree had been previously entered. No rea-
son is suggested by appellant's counsel in their brief
why the court might not properly state the account
upon the evidence before it, rather than send the
parties to a master to take the evidence over again.
It is true that statement of complicated accounts upon
contradictory evidence is ordinarily the work of a
master, whose duty it is to "render a concise and
accurate statement so that the same may be readily
comprehended and any objection taken passed upon
understandingly." Moshier v. Norton, 83 Ill. 519-525.
Where evidence is so conflicting and unsatisfactory as
to make such course advisable, a reviewing court will
send the cause back to be "referred to a master to
take and state the accounts between the parties and
to ascertain accurately the amount due"; and such "is
the well recognized and established practice in all cases
of a complicated character." Bressler v. McCune,
56 Ill. 475-482. The case at bar is not, however, of
such a character as to make such reference absolutely
necessary. There were no mutual accounts, nor coun-
ter-claims against complainant. It was purely discre-
tionary with the court whether so to refer it or not.
Schulz v. Schulz, 138 Ill. 665-668. In Land Co. v.
Peck, 112 Ill. 408-436, it was objected that the cause

was not referred to a master to report the amounts
due. The court said, "There are no complicated ac-
counts here as in cases where we have required there
should be a reference to a master. As soon as the
rights of the parties were settled, determining the
amount due any of the parties in whose favor decrees
were entered was but a matter of the computation of
interest on fixed amounts, and finding the sum of
the principal and interest." No two cases are pre-
cisely alike, and the case at bar differs materially from
cases cited by appellant's counsel, such as French v.
Gibbs, 105 Ill. 523-528; Beale v. Beale, 116 Ill. 292;
Moffett v. Hanner, 154 Ill. 649-655.

It is contended in behalf of appellant that numerous
errors occurred in the admission of evidence in that
the entries upon the cash book and ledger of the Great
Northern Hotel Company were incompetent as evi-
dence against the defendant. A distinction is sought
to be made between these entries. The first items ob-
jected to refer to transactions with Bipper, Smith,
Fay, Wilmarth and Friedman, Keiler & Co., parties
from whom William S. Eden received accommodation
checks which were turned over to defendant Laughlin.
The Great Northern Hotel Company thereupon gave
its checks for the same amounts to these parties re-
spectively, or else gave Eden's note, which it after-
ward paid. The hotel company then charged to the
Great Northern Baths the checks so given to the ac-
commodators. It is said these were not entries in the
ordinary course of business of the hotel company and
did not show transactions where, upon the face of the
accounts, money appeared to pass to the defendant,
and that such book entries are not admissible against
the defendant in any event. That defendant received
the money represented by these entries, does not de-
pend for proof, however, upon the evidence of the
entries alone. It is stated in appellant's brief that
"it is apparent the fact was, that it was desired to
show by the books that payments were being made

to the Baths as cash payments and that money was not being taken out of the hotel company for investment in stock of the Northern Hotel Company." The materiality of the entries is not alone dependent upon their representing actual transactions in due course of business, although it is by no means apparent that they do not, but in part upon their having been made in this manner with the knowledge of defendant as the preponderating evidence, we think, must be deemed to show, and for the purpose of enabling him to conceal the manner in which he was procuring money to buy the stock and the source from which it was derived. The testimony of the bookkeeper is to the effect that the entries were still further obscured, as in the Bipper case, in that in some cases no single sum shown by the entries corresponds with any of the amounts received by defendant on Bipper's checks, because these amounts were split up, and checks were given for different amounts, corresponding in the aggregate, however, and returning the money advanced by Bipper. In Cooke v. The People, 231 Ill. 16-17, it was held that books of the bank, when taken in connection with the deposit slips and the testimony of witnesses, were admissible in evidence as against the defendant in that case, for the purpose of showing that money deposited in said bank was credited to the individual account of the defendant. In the same way we are of opinion that the entries in question were admissible as tending to show that the money paid to defendant, some of which he admits he received and some of which he says he does not know whether he received or not, was in fact charged to and paid out of money of complainant, and that the entries in question related to the money advanced to defendant for the purchase of stock. The book entries were certainly admissible to show how the account of these advances was kept in the books. They may be excluded from consideration as evidence of the loans themselves. There is other evidence as to these, direct testimony not contradicted, and much

of it not even disputed. The entries upon the books of the Great Northern Baths were introduced also to show that these sums of money were in fact charged eventually to complainant. The bookkeeper testifies that many of the entries in question were made not "upon information furnished me by anybody," but that she "got the information from the check I would draw to these particular people that are enumerated there, or from the money I would give to that particular person."

It is further claimed that it was error to admit evidence of what is called constructive notice to the Northern Hotel Company of the fact that Eden had in October, 1897, transferred 498 shares of the Baths stock to Mrs. Eden, the complainant. In view of the fact that the Northern Hotel Company is not complaining, that the transfer of the "Baths" property has never been brought into question, and is not now questioned by anyone showing a right to make objection, we deem it immaterial whether such evidence of notice was properly introduced or not. If we assume that there was any error in its admission, it is not error of which appellant can now complain. Nor do we find error in the admission of evidence of the party who filled out certain checks and testified thereto, the checks themselves having been destroyed, and the witness referring to the stubs of the checks to refresh her memory. Objection is made as to certain items which it is said cannot be charged against appellant because it is said the amounts did not go directly to appellant. If, however, they were paid for him direct to parties from whom he was purchasing stock which he received, as there is evidence tending to show, we fail to perceive why they should not be charged to him in the same way as though the money itself actually passed through his hands.

It is conceded by appellant that he received $19,000. The balance of the account as stated he disputes. We cannot, in the limits proper for this discussion, follow

in detail the items thus disputed. It must suffice to say that a laborious consideration fails to convince us that material error exists in the conclusion stated in the decree. One of these alleged errors relates to "a check of $2,000 from Smith," which, it is said, "was not delivered to Laughlin." So far as we can discover, there is nothing in the evidence tending to show that it was not properly chargeable to appellant and used for his benefit. We have carefully examined the separate items claimed by appellant's counsel to be erroneously charged against him and the evidence relating thereto. We find no sufficient reason to interfere with the conclusion reached by the chancellor and the findings of the decree.

"Finally," say appellant's counsel, "we contend on broad principles of justice * * * that the evidence shows beyond question that Mrs. Eden had no interest in these moneys loaned to Laughlin." That question we have considered and our conclusions above stated are adverse to appellant's contentions. Upon what principle of justice appellant can claim to be entitled to the money himself, $19,000 of which he concedes is not his, but which he has retained for years, has not been pointed out to us, and we have not been able to discover.

For reasons indicated the decree of the Circuit Court will be affirmed.

*Affirmed.*